594 F.2d 960
 John R. SIMKO, Administrator of the Estate of John R. Simko,
III, Deceased, and Luella Campbell Miller, on her own
behalf, and as parent and natural guardian of John R.
Campbell, a minor on behalf of John R. Campbell, a minor
v.
C & C MARINE MAINTENANCE CO., a corporation, Appellant,
American Commercial Barge Lines Company, a
corporation, Georgetown Landing Co., a
corporation.
 Nos. 78-1174 through 78-1176.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 14, 1978.
Decided Feb. 20, 1979.
 
 Bruce R. Martin, Pittsburgh, Pa., for appellant.
 Stanley M. Stein, Feldstein, Grinberg, Stein & McKee, Pittsburgh, Pa., for appellee, Simko, et al.
 John W. Jordan, IV, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for appellee, American Commercial Barge Lines.
 Before SEITZ, Chief Judge, and GIBBONS and WEIS, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 This appeal presents the question whether John R. Simko, III occupied the status of a seaman for purposes of recovery under the Jones Act, 46 U.S.C. § 688, at the time of his death. It also requires this Court to venture into the maelstrom of the maritime doctrine of unseaworthiness and its counterpart, the right of a shipowner to claim indemnity from a stevedore for expenses incurred in defending an action for damages brought by the stevedore's employee.[1]
 
 I.
 
 2
 John Simko was hired by C & C Marine Maintenance Company (C & C) as a laborer. He was assigned the job of assisting in the cleaning and minor repair of barges brought to C & C's facilities along the Ohio River by a variety of barge companies. On March 11, 1972, some two weeks after his hiring by C & C, Simko was assisting in the cleaning of barge # 2699, owned by American Commercial Barge Lines Company (ACBL). While pulling on a water hose being used by another employee in washing ACBL # 2699's deck, Simko slipped and fell overboard. Despite efforts to throw him a line Simko was swept beneath barges moored nearby by the swift current and he drowned. His estate brought this wrongful death and survival action against both C & C and ACBL, seeking recovery under the Jones Act and the doctrine of unseaworthiness. Both defendants denied liability under either claim, and ACBL crossclaimed against C & C for indemnity from any liability or expense incurred in defending the lawsuit that was attributable to C & C's breach of its implied warranty of workmanlike service in contracting to clean and repair barge # 2699.
 
 II.
 
 3
 In order to facilitate an understanding of the issues presented in this appeal it is necessary to recount the theories of liability asserted by plaintiffs. Their cause of action was founded on the Jones Act and the maritime laws of this country, particularly the doctrine of unseaworthiness. The plaintiffs demanded a jury trial on both the Jones Act and unseaworthiness claims.
 
 
 4
 This case was submitted to the jury with separate instructions on the two claims. The court instructed the jury that they could find that Simko was a Jones Act seaman employed by C & C as a member of the crew of either ACBL # 2699 or C & C's crane barge, to which # 2699 had been moored, and that C & C's negligence caused his death.[2] The court also instructed the jury that ACBL, as Simko's employer, could be found liable under the Jones Act for Simko's death if its negligence in controlling and supervising his duties while aboard barge # 2699 had caused the accident.[3]
 
 
 5
 With respect to the unseaworthiness claim the court instructed the jury that they could find either defendant liable if an unseaworthy condition aboard one of its vessels caused Simko's death. The instructions permitted recovery against C & C alone if the crane barge were found unseaworthy; if ACBL # 2699 were found unseaworthy, liability could be imposed against its registered owner or against C & C, as owner pro hac vice. Moreover, the instructions permitted liability to be imposed against either defendant for an unseaworthy condition on ACBL # 2699 if Simko were found to have been working as a longshoreman aboard that vessel, rather than as a member of its crew.
 
 
 6
 The jury returned a general verdict in favor of the plaintiffs on their Jones Act and unseaworthiness claims against C & C, in the amount of $61,000.00. The jury found in favor of ACBL on the plaintiffs' claims, and also found for ACBL on its cross-claim against C & C for indemnity. Following a non-jury trial on the amount of expenses incurred by ACBL in defending this lawsuit, the court awarded ACBL $5,794.52 on its indemnity claim.
 
 III.
 
 7
 C & C has appealed from both judgments entered by the district court, contending, as it did throughout the course of the trial proceedings, that the evidence presented at trial was insufficient to permit the submission of the Jones Act claim to the jury. Thus, C & C argues that the district court should have directed a verdict in favor of the defendants on that claim and disposed of the unseaworthiness claim without a jury on the admiralty side. C & C also argues that ACBL's indemnity claim should have been tried to the court on the question of C & C's liability to ACBL, that C & C should not be held liable for indemnity in a case in which it may have been found to have been the owner pro hac vice of the shipowner's vessel, and that the amount of expenses awarded by the court to ACBL was excessive.
 
 A.
 
 8
 We agree with C & C's contention that the evidence presented at trial was insufficient to permit the submission of the Jones Act claim to the jury and that the district court should have directed a verdict in favor of both defendants on that claim. See note 3 Supra.
 
 
 9
 This Court has previously held that among the "decisive elements necessary of proof in determining who is 'a member of a crew' within the meaning of the Jones Act" is a requirement " 'that the worker be aboard (the ship) primarily to aid in navigation.' " Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 36 (3d Cir. 1975), Cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). The estate's Jones Act claim was submitted to the jury on the theory that Simko, at the time of his death, was a member of the crew of either ACBL # 2699 or C & C's crane barge, to which # 2699 was moored. However, the evidence introduced at trial could not support a jury finding that Simko was aboard either barge primarily to aid in its navigation.
 
 
 10
 Testimony introduced at trial shows that Simko was hired by C & C as a laborer and that his function was to assist in the cleaning of barges moored to C & C's crane barge. He shoveled debris from their interiors, squirted their decks with water hoses, and helped in carrying pumps and other equipment used in the cleaning operations. There was no evidence presented to show that in performing those duties he was engaged, at any time, in the handling or maneuvering of any barge. Simko was not involved in the transporting of ACBL # 2699 to C & C's facilities or the mooring of # 2699 to the crane barge. Moreover, neither ACBL # 2699 nor the crane barge was ever in motion at any time Simko was aboard.
 
 
 11
 In Griffith this Court held that a worker injured while engaged in loading a barge at a steel mill along the Ohio River had not been aboard that barge primarily to aid in its navigation, and thus we affirmed the district court's entry of summary judgment against the plaintiff on a Jones Act claim. Yet Griffith testified that he had assisted in the throwing of lines from one barge to another while they were being "rounded," a procedure utilized in moving loaded barges away from the seawall. We deemed the navigational functions performed by Griffith to be too insignificant to establish seaman status given that his primary duties involved the work of a harbor worker, namely, handling cargo. 521 F.2d at 37-38.
 
 
 12
 The focus applied by this Court in Griffith to the nature of the duties performed by the putative Jones Act claimant is consistent with the leading Supreme Court opinion in this area, Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957). There, in reversing a lower court's determination that the plaintiff "was not 'naturally and primarily on board (a dredge) to aid in navigation,' " the Court's majority relied on testimony presented at trial giving rise to an inference that the plaintiff was responsible for the dredge's seaworthiness and that his duties included the taking of soundings and the cleaning of navigation lights when the dredge was in transit. Id. 372-73, 77 S.Ct. 415. We cannot draw a similar inference from the record made in this case.
 
 
 13
 Like Griffith, Simko's primary duties involved the work of a harbor worker. The clear import of our opinion in Griffith is that a maritime worker who does not actually go to sea but who is injured while performing duties on a navigable vessel must establish that he performed significant navigational functions with respect to that vessel in order to recover under the Jones Act. The record is devoid of any proof that Simko performed such functions; thus, the district court erred in denying C & C's motion for a directed verdict on the estate's Jones Act claim.
 
 B.
 
 14
 C & C contends that, absent a valid Jones Act claim, the district court lacked jurisdiction on the civil side over the unseaworthiness and indemnity claims and that the jury's verdicts on those claims have no validity. Thus, appellant asks this Court to vacate both judgments of the district court and remand this case for a trial to the court on both claims in the exercise of its admiralty jurisdiction. We do not find C & C's jurisdictional arguments persuasive.
 
 
 15
 There is no question but that the district court had subject matter jurisdiction over all the claims raised by the parties to this lawsuit. Stripped of its jurisdictional overtones, C & C's contention is that, absent a finding that Simko was a Jones Act seaman, the district court was precluded from submitting the admiralty claims arising out of the accident to a jury. This argument ignores the effect of the Supreme Court's opinion in Fitzgerald v. United States Lines Co., 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). In Fitzgerald the Court adopted a rule that requires a Jones Act negligence claim and admiralty claims for unseaworthiness and "maintenance and cure" arising out of the same transaction to all be tried to a jury when the plaintiff so demands. Considerations of judicial economy and fairness to the litigants led the Court to its conclusion that such claims should be tried to a single factfinder, and the Congressional grant of the right to a jury trial to the Jones Act plaintiff required that that factfinder be the jury. 374 U.S. at 20-21, 86 S.Ct. 1646. See Haskins v. Point Towing Co., 395 F.2d 737 (3d Cir. 1968).
 
 
 16
 In Blake v. Farrell Lines, Inc., 417 F.2d 264 (3d Cir. 1969), this Court approved a district court's consolidation of a shipowner's indemnity suit brought in admiralty with a longshoreman's civil suit for damages against the shipowner. We also approved, based on our reading of Fitzgerald, the district court's direction that all the factual issues in the consolidated action, save the amount of counsel fees to be awarded on the indemnity claim, were to be tried to a jury. Thus, it is clear that there was no error in the district court's initial determination in this case that all of the claims presented should be tried to a jury.
 
 
 17
 The issue posed by C & C, however, is whether a district court must remove a case from the jury's consideration when a directed verdict should be granted on that element of the case creating the plaintiff's right to a jury trial. More precisely, the appellant asks this Court to vacate a jury verdict based on admiralty claims when a directed verdict should have been granted by the district court on the Jones Act claim that formed the predicate to a jury trial.
 
 
 18
 The principles articulated in Fitzgerald lead us to reject C & C's request. Under Fitzgerald, if the jury had found, as a matter of fact, that Simko was not a Jones Act seaman, C & C could not now complain that the jury had no jurisdiction to find it liable, nonetheless, on the estate's unseaworthiness claim. Where an appellate court determines that no facts presented at trial would permit the jury to find that a plaintiff was a Jones Act seaman, we believe that the policies of judicial economy and fairness to the litigants identified as the basis of the Fitzgerald rule dictate a similar result. We emphasize, as did the Court in Fitzgerald, that while the plaintiffs and cross-claimant in this case had no right to a jury trial on their admiralty claims alone, See Rule 38(e), F.R.Civ.P., neither the Constitution nor any statute or rule forbade the trial of those claims to the jury. See 374 U.S. at 20, 83 S.Ct. 1646.
 
 
 19
 We are not required to decide in this case the question presented in Mahramas v. American Export Isbrandtsen Lines, Inc., 475 F.2d 165, 172-73 (2d Cir. 1973). In Mahramas, a directed verdict for the defendants had been entered on a Jones Act claim during trial; the district judge then dismissed the jury and determined the remaining admiralty issues himself. The Second Circuit held that Fitzgerald did not preclude such a practice. Significantly, however, the Mahramas court did not hold that district courts must remove such cases from the jury's consideration. The practice approved in Mahramas has been followed by some district courts in this Circuit, although the contrary practice of submitting admiralty claims to the jury following a directed verdict on a Jones Act claim has also been utilized. Compare Hickman v. Ohio Barge Line, Inc., 376 F.Supp. 1092, 1094 (W.D.Pa.1974) With Dobbins v. Crain Brothers, Inc., 567 F.2d 559, 561 (3d Cir. 1977).
 
 
 20
 We note that Professors Gilmore and Black, in characterizing the Mahramas holding as a "narrow" reading of Fitzgerald, have suggested that "the argument could be made, not implausibly, that the plaintiff is entitled to a jury trial on the general maritime law counts, no matter what happens to the Jones Act count (at least if it is assumed that the Jones Act count was not frivolous.)" G. Gilmore & C. Black, The Law of Admiralty § 6-9 at 296 (2d ed. 1975). Gilmore and Black base their suggestion on the terms of the remand from the Supreme Court in Fitzgerald itself. The Fitzgerald remand, however, does not require the adoption of the broad rule they propose. Nonetheless, it supports our resolution of the issue before us.
 
 
 21
 In Fitzgerald, the Court remanded for a jury trial the plaintiff's maintenance and cure claim that had been adversely decided by the district court and affirmed by the Second Circuit. The plaintiff's Jones Act claim had been adversely decided by the jury, the judgment incorporating the verdict had been affirmed by the Second Circuit, and that judgment had not been reviewed by the Supreme Court. In the Supreme Court the shipowner-defendant argued that the remanded maintenance and cure claim, no longer joined to the Jones Act predicate to a jury trial, could be tried by the court sitting without a jury. The Court rejected that argument, adopting the view that the plaintiff was entitled to relief from the trial court's initial error in denying him a jury trial on the admiralty claim, and that the appropriate relief consisted of granting him the kind of trial he would have had but for that error. 374 U.S. at 21-22, 83 S.Ct. 1646. The fact that the plaintiff had been unsuccessful on his Jones Act claim did not persuade the Court otherwise.
 
 
 22
 Here, of course, the defendants were entitled to a directed verdict on the Jones Act claim but the district court submitted it along with related admiralty claims to the jury. Thus, our case is not controlled by the terms of the remand in Fitzgerald. Nonetheless, based on the principles articulated in Fitzgerald, and bolstered by the factual situation presented therein, we hold that C & C is not entitled to attack the jury's verdict on the unseaworthiness and indemnity claims solely because the district court should have directed a verdict against the plaintiffs on their Jones Act claim.
 
 C.
 
 23
 We turn then to a consideration of whether C & C is entitled to relief from the judgments entered against it in this case for reasons other than those pressed in its "jurisdictional" argument. With respect to the jury's verdict on the estate's claim for liability we conclude that ACBL is entitled to the verdict rendered in its favor, but that the judgment incorporating the jury's verdict against C & C must be vacated and the case remanded for further proceedings.
 
 
 24
 None of the parties has challenged the judgment entered in favor of ACBL on the plaintiffs' claim but C & C has contended, based on its "jurisdictional" theory discussed above, that it must be vacated. Based on our holding in Part B we reject that contention.
 
 
 25
 The jury's verdict against C & C on plaintiffs' claim, however, must be set aside. We have ruled that no evidence was presented at trial from which the jury could find that Simko was a Jones Act seaman and thus C & C could not be held liable to the plaintiffs on their Jones Act claim. Our conclusion that Simko was not a Jones Act seaman with respect to either the crane barge or ACBL # 2699 would also preclude plaintiffs' recovery against C & C on their claim that C & C was liable for Simko's death because of its breach of the absolute duty to provide seamen aboard its vessels with a seaworthy ship. However, the unseaworthiness claim presented by plaintiffs against C & C, and incorporated in the district court's instructions, also permitted the jury to find C & C liable to Simko's estate on another basis. The jury could have found that Simko was not employed as a seaman but as a longshoreman, who, nonetheless, was entitled to the guarantee of seaworthiness while temporarily engaged in a seaman's work and exposed to a seaman's hazards aboard ACBL # 2699. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Furthermore, the jury was instructed that they could find that C & C, and not ACBL, was liable for an unseaworthy condition on barge # 2699 causing Simko's accident if they found that C & C was its owner pro hac vice.
 
 
 26
 Because the jury returned a general verdict on plaintiffs' claim we do not know whether the invalid Jones Act claim was the sole basis of the verdict or whether the jury found that Simko was a "Sieracki seaman" with respect to whom C & C breached its duty as owner pro hac vice to maintain ACBL # 2699 in a seaworthy condition.[4] C & C has not presented any argument to this Court that there was insufficient evidence to support a jury verdict against it on the latter ground nor has C & C contended that as a matter of law it could not be held liable on the estate's unseaworthiness claim. To the contrary, C & C asks this Court to direct that the unseaworthiness claim be resolved by the district court on the admiralty side after remand.
 
 
 27
 This Court has held that "(w)here . . . a general verdict may rest on either of two claims one supported by the evidence and the other not a judgment thereon must be reversed." Albergo v. Reading Co., 372 F.2d 83, 86 (3d Cir. 1966), Cert. denied, 386 U.S. 983, 87 S.Ct. 1284, 18 L.Ed.2d 232 (1967). In a case similar to this one, the Supreme Court adopted an identical rule where the jury's verdict against a shipowner may have been impermissibly based on a finding that the decedent occupied the status of a Sieracki seaman. United New York and New Jersey Sandy Hook Pilots Association v. Halecki, 358 U.S. 613, 619, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959). See Morrissey v. National Maritime Union of America, 544 F.2d 19, 26-27 (2d Cir. 1976) (the general rule stated in Halecki and Albergo must be followed unless it can be stated with confidence that the same verdict would have been returned even if the invalid claim had not been submitted to the jury).
 
 
 28
 Because the jury's verdict against C & C on plaintiffs' claim may have rested on a finding that Simko was a Jones Act seaman, the judgment against C & C must be vacated and remanded to the district court for further proceedings. On remand, the district court must first decide whether Simko was a temporary seaman aboard ACBL # 2699 within the meaning of Sieracki. If he was, it should then determine whether C & C was owner pro hac vice of that barge, as that term has been defined in this Circuit, See Griffith v. Wheeling Pittsburgh Steel Corp., supra, 521 F.2d at 40-41, & n.11; G. Gilmore & C. Black, Supra §§ 4-20 to 4-24, and whether Simko's death was attributable to the unseaworthiness of that barge. Because the claim being remanded to the district court is based purely on maritime law we find no basis to require the impanelling of a second jury to decide it. Unlike the situation presented in Fitzgerald, discussed in Part B above, plaintiffs were not deprived of their right to a jury trial during the proceedings below. We leave it to the discretion of the district court to decide whether, in the interests of substantial justice, it will make the findings required by the terms of this remand on the present record or grant a motion by either party to reopen the record for the taking of additional testimony on the Sieracki claim.
 
 D.
 
 29
 We have already held in Part B above that the district court's judgment incorporating the jury's verdict on ACBL's cross-claim for indemnity will not be vacated solely because the Jones Act claim was improperly submitted to the jury. C & C does not contend that the district court's instructions to the jury on that claim were in error, but it does contend that, as a matter of law, it could not be found liable for indemnity to ACBL if the jury found that the cause of Simko's accident was the unseaworthiness of ACBL # 2699 and that C & C was responsible for that unseaworthiness as owner pro hac vice. C & C bases this contention on the legal theory underlying the indemnity action: that the Stevedore warrants to the Shipowner that he will perform his contractual duties in a workmanlike manner. C & C posits that if it occupied the status of shipowner pro hac vice of ACBL # 2699 then its warranty of workmanlike performance in cleaning and repairing that barge could run only to itself.
 
 
 30
 C & C's argument misconstrues the nature and purpose of the indemnity action. That purpose is to compensate a shipowner for any foreseeable liability imposed or expense incurred in the defense of a lawsuit brought by a longshoreman injured aboard its ship when that injury was proximately caused, even in part, by the stevedore's breach of his warranty of workmanlike performance. See Dobbins v. Crain Brothers, Inc., 567 F.2d 559, 564 (3d Cir. 1977). The jury's verdict on the indemnity claim in this case encompassed implicit findings that C & C breached its warranty of workmanlike performance, that ACBL did not prevent or hinder C & C from completing workmanlike performance, and that Simko's accident was attributable to the breach of C & C's warranty. Given these findings it makes no difference whether the jury found, or whether the court on remand might find, that C & C exercised so great a degree of control over ACBL's barge that it became its owner pro hac vice. Such an assumption of control would not rescind C & C's warranty to ACBL to clean and repair its barge in a workmanlike manner.
 
 
 31
 C & C contends that the district court erred in awarding ACBL indemnity for all the legal expenses it incurred in the proceedings below. In particular, C & C argues that it should not be held liable for the costs ACBL incurred in seeking to impose liability upon C & C for Simko's death, in resisting C & C's post-trial motions to dismiss for lack of jurisdiction, and in prosecuting the indemnity claim itself. In the context of this case we believe that the district court did not err in awarding ACBL indemnity for its efforts in asserting that C & C was liable for Simko's death. That effort was a foreseeable and necessary element of ACBL's defense of plaintiffs' claim. Likewise, the costs incurred by ACBL in opposing C & C's post-trial motions were directed, at least in part, toward preserving its favorable judgment on the plaintiffs' claim and were properly included in the indemnity award.
 
 
 32
 With respect to one element of the expenses awarded ACBL, however, we agree that the district court erred. This Court has held that a shipowner is entitled to be indemnified only for those litigation expenses incurred in defending a longshoreman's action, and is not entitled to indemnity for the expenses incurred in prosecuting the indemnity claim itself. Burris v. Global Bulk Carriers Inc., 505 F.2d 1173, 1178 n.8 (3d Cir. 1974). The district court did not attempt to determine what portion of the legal fees paid by ACBL was devoted to its efforts to recover indemnity from C & C at trial, nor what portion of the fees paid for post-trial work was devoted to the protection of its indemnity award. In similar situations involving the award of attorney's fees to successful litigants in multi-count claims against multiple parties we have required that fees be awarded only for those hours expended in a successful effort to establish liability. See Baughman v. Wilson Freight Forwarding Co., 583 F.2d 1208, 1214-16 (3d Cir. 1978). Here, we conclude that ACBL should be indemnified with an award of attorney's fees only for those hours expended in defending plaintiffs' lawsuit against it, and not for those hours expended in pursuing and protecting the indemnity claim itself.
 
 
 33
 Thus, the district court's judgment awarding indemnity to ACBL for expenses incurred in defending plaintiffs' action must also be vacated and remanded for further proceedings. On remand, the district court must apportion the expenses incurred by ACBL during this lawsuit, and base its fee award only on those hours that may reasonably be said to have been devoted to ACBL's defense of plaintiffs' claim.
 
 IV.
 
 34
 The judgment of the district court entered in favor of defendant ACBL on plaintiffs' claim will be affirmed. The judgment entered against defendant C & C on that claim will be vacated and remanded for proceedings consistent with this opinion.
 
 
 35
 The judgment of the district court entered in favor of ACBL on its cross-claim against C & C for indemnity will be vacated and the matter remanded for proceedings consistent with this opinion.
 
 
 36
 GIBBONS, Circuit Judge, concurring and dissenting:
 
 
 37
 If I could be persuaded that Simko presented no evidence sufficient to go to the jury on this Jones Act claim, I would join fully in Judge Seitz's opinion for the court. I agree that there was insufficient evidence of Simko's status as a Jones Act seaman in the employ of American Commercial Barge Lines Company (ACBL), and that there was insufficient evidence that he was a Jones Act seaman on the ACBL barge # 2699 or that C & C Marine Maintenance Company (C & C) was a pro hac vice owner of that barge. But I believe that it was proper, on the evidence presented, to submit to the jury the issue of Simko's Jones Act status as a member of the crew of the crane barge owned by C & C.
 
 
 38
 In Griffith v. Wheeling-Pittsburgh Steel Corp., 521 F.2d 31 (3d Cir. 1975), Cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), we outlined the four elements required to support a finding that a plaintiff is, as against a particular defendant, a Jones Act seaman. The defendant must be plaintiff's employer; the vessel must be in navigation; the plaintiff must have a more or less permanent connection with the vessel; and the plaintiff must have been aboard primarily to aid in its navigation. If on any of the four elements the evidence is insufficient to present a genuine fact issue, the Jones Act claim may not be submitted to the jury. Griffith v. Wheeling-Pittsburgh Steel Corp., supra, 521 F.2d at 36-37.
 
 
 39
 From the evidence presented the jury could have found the following facts. C & C has a landing on the bank of the Ohio River where it cleans and repairs barges. As disclosed in plaintiff's exhibits P1-P8 (seven photographs and one diagram), C & C's facilities include five mooring devices (called trie-tie clusters) permanently embedded in the bottom of the river, and several floating barges. The office barge, which is moored between two trie-tie clusters, is reached from the shore by a long gangplank. Outboard of the office barge is moored a working barge, on which, along with other equipment, is a mobile, crawler crane. Barges turned over to C & C for cleaning and repair are moored outboard of and forward and aft of the crane barge. The crane is used to open the covers of barges for cleaning and to remove debris from their interiors. Simko was hired on February 22, 1972, and was assigned to work on the crane barge. His work was manual labor, including using a broom or shovel, carrying pumps, and helping with the hoses which ran from the crane barge and were used to wash down barges belonging to C & C customers. On the day of his death Simko was helping to clean the ACBL barge. While pulling on a hose in order to obtain more slack he lost his balance and fell into the river. There was no lifeline on the crane barge near enough to reach him during the brief time he was afloat before he was swept under a barge moored downstream from the ACBL barge.
 
 
 40
 Applying the Griffith standards to these facts it seems to me the jury could have concluded that Simko was a crewman on the crane barge. It is not disputed that he was employed by the owner thereof and the evidence strongly suggests that it was his regular work station. Thus his connection with it was sufficiently permanent to satisfy the Griffith test.
 
 
 41
 On the twin issues of whether the crane barge was a vessel "in navigation" and whether Simko was aboard to aid in navigation, the issue is closer. I think, however, that the evidence met these requirements as well. In Senko v. LaCrosse Dredging Corp., 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957), the Court held that a handyman, employed on a dredge which throughout his employment was anchored to the shore, was covered by the Jones Act. See also Grimes v. Raymond Concrete Pile Co., 356 U.S. 252, 78 S.Ct. 687, 2 L.Ed.2d 737 (1958) (pile driver operator on a Texas Tower permanently affixed to the ocean floor); Butler v. Whiteman, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754 (1958) (laborer doing odd jobs on a tug that had been taken out of service). These cases are dispositive. First, they indicate that Simko's day to day tasks were sufficiently "navigational" to bring him within the scope of the Act.[1] And all three clearly negate a rule that a vessel must be moving or at sea in order to meet the "in navigation" requirement. They are therefore in accord with our definition of that requirement in Griffith, where we observed:
 
 
 42
 As properly construed, the "in navigation" requirement is used in its broad sense, and is not confined strictly to the actual navigating or movement of the vessel, but instead means that the vessel is engaged as an instrument of commerce or transportation on navigable waters.
 
 
 43
 521 F.2d at 37. Under Griffith, the question, then, is whether the crane barge, which was in navigable waters and capable of movement, was used as an instrument of commerce on those waters. We have indicated that whether or not a vessel is in navigation for Jones Act purposes is one ordinarily to be decided by a jury. Mroz v. Dravo Corp., 429 F.2d 1156, 1165-66 (3d Cir. 1970). The jury here could have found that the crane barge, used not only as a mooring for vessels unquestionably in navigation, but also as a means for removing the hatch covers of and debris from those vessels and for cleaning and pumping them so as to facilitate their further use in transportation, was engaged in commerce on navigable waters.
 
 
 44
 The majority's argument that Griffith compels a different result is, to put it mildly, a strained one. In that case, the evidence showed conclusively both that Griffith was based On land rather than on a vessel and that by far the greater portion of his work was cargo handling classically the task of a longshoreman, and flatly inconsistent with his claim of seaman status. See 521 F.2d at 37-38. In this case, Simko worked on board a vessel and his duties were fully consistent with seaman status. The result in Griffith therefore cannot be controlling here.
 
 
 45
 I am aware that in cases construing the in navigation test for claims of unseaworthiness, the Supreme Court apparently has adopted a somewhat more rigid test than that adopted in Griffith. See L, Roper v. United States, 368 U.S. 20, 82 S.Ct. 5, 7 L.Ed.2d 1 (1961); West v. United States, 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161 (1959). Moreover, as C & C points out, there are certainly cases from other circuits which suggest a different outcome even under the Jones Act. See, e. g., Cook v. Belden Concrete Products, Inc., 472 F.2d 999 (5th Cir.), Cert. denied, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973) (plaintiff was a carpenter on a mobile floating construction platform moored on navigable waters. Held: not a vessel for Jones Act purposes). But see Barrios v. Louisiana Construction Materials Co., 465 F.2d 1157 (5th Cir. 1972) (plaintiff, an oiler on a land based dragline, was injured while loading the dragline onto a barge. Held: Jones Act question properly left to jury).
 
 
 46
 There are good reasons, however, for rejecting the approach of those cases. First, the facts of the Supreme Court's own Jones Act decisions, which are controlling here, are flatly inconsistent with the approach adopted by the majority. As a purely formal matter, West and Roper are therefore not controlling. Nor is their logic persuasive in this situation, since both cases rest fundamentally on the notion that it is unfair to hold a shipowner of a vessel that has been withdrawn from maritime service to the standard of strict liability imposed by the seaworthiness doctrine. See 361 U.S. at 122, 80 S.Ct. 189. That concern is, of course, absent in Jones Act cases. Finally, insofar as these cases support any restriction upon the "in navigation" standard, it is clearly not the one which the majority relies upon. Indeed, in the Sieracki seaman context, the Supreme Court appears to have rejected a similar "in navigation" test based on "the specific type of work that each . . . (workman) is doing on shipboard at the moment of injury," on the ground that "(t)he job analysis which (that inquiry) would call for would lead to fortuitous results." West v. United States, supra, 361 U.S. at 122, 80 S.Ct. at 192. The same objection applies here. Simko's maintenance duties were as meaningful to the "navigation" of barges upon which he worked and with which he dealt as the duties of his colleagues on the landing barge who were assigned to handle the mooring lines, or the duties of the handymen who were permitted to take their claims of seaman status to the jury in Senko v. LaCrosse Dredging, supra, and Butler v. Whiteman, supra. No reason of policy or precedent suggests the need for a different result here. I therefore conclude that there was sufficient evidence to submit to the jury the theory that Simko was a Jones Act seaman on the crane barge.
 
 
 47
 Since a directed verdict should have been granted on the claim that Simko was a Jones Act seaman on the ACBL barge, and we cannot tell whether the jury predicated its verdict against C & C on that theory, I agree with the majority that the judgment should be vacated. But on remand, since Simko's administrator established a prima facie case of Jones Act status on the crane barge, I would grant a new trial before a jury on that claim as well as the admiralty claim.
 
 
 
 [1]
 Simko's accident predated the effective date of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 Et seq. Those amendments eliminated a longshoreman's action for unseaworthiness against the owner of the vessel and the corresponding indemnity action by the shipowner against a stevedore-employer. See Hurst v. Triad Shipping Co., 554 F.2d 1237, 1243-44 (3d Cir.), Cert. denied, 434 U.S. 861, 98 S.Ct. 188, 54 L.Ed.2d 134 (1977); Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 40 (3d Cir. 1975), Cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976)
 
 
 [2]
 The court instructed the jury that if they found Simko to be a member of the crew of only ACBL # 2699, they could still find against C & C on the Jones Act claim if they found that C & C was owner pro hac vice of that barge. C & C argues on appeal that the district court's instructions on that aspect of the Jones Act claim were in error because, as a matter of law, it did not occupy the status of pro hac vice owner of ACBL # 2699. However, that instruction in the context of a Jones Act claim appears to have been superfluous. Once it is established that an employer-employee relationship exists between a Jones Act seaman and the defendant, it is only necessary for the plaintiff to show that the defendant's negligence caused the injury complained of in order to recover. Ownership of the vessel on which the seaman was a crew member is not a necessary element of proof. See Spinks v. Chevron Oil Co., 507 F.2d 216, 224 (5th Cir. 1975). See also Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31 (3d Cir. 1975), Cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); Mach v. Pennsylvania Railroad Co., 317 F.2d 761 (3d Cir. 1963)
 
 
 [3]
 The submission to the jury of the Jones Act claim against ACBL was clearly erroneous given that no evidence had been presented at trial to establish that an employment relationship existed between Simko and ACBL under the "borrowed servant" doctrine. Absent such a relationship the plaintiffs could not recover against ACBL under the Jones Act. See Haskins v. Point Towing Co., 421 F.2d 532, 536 (3d Cir.), Cert. denied, 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970). That error was harmless, however, given that the jury found in favor of ACBL on plaintiffs' claim against it. Plaintiffs have not appealed from the district court's judgment incorporating that verdict
 
 
 [4]
 The jury's award of indemnity to ACBL might ordinarily be thought to provide some clue as to the basis for the verdict on the plaintiffs' claim for liability. However, the district court properly instructed the jury to pass on that claim even if they found that neither of the defendants was liable on the plaintiffs' Jones Act and unseaworthiness claims. See Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc., 339 F.2d 673, 674-75 (3d Cir.), Cert. denied, 382 U.S. 812, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965). Therefore, it is possible that the jury impermissibly decided that Simko was a Jones Act seaman employed by C & C as a member of the crew of its crane barge, that his accident was caused by C & C's negligence, that C & C's negligence breached its implied warranty to ACBL to clean and repair barge # 2699 in a workmanlike manner, and that ACBL should be indemnified by C & C for its costs in defending this lawsuit
 
 
 [1]
 The majority's attempt to distinguish Senko v. LaCrosse Dredging Corp., supra, is unpersuasive. The duties performed by the "deckhand" in that case, as recounted by the Court, required him to "clean and take care of the deck, splice rope, stow supplies, and, in general, to keep the dredge in shape." 352 U.S. at 372, 77 S.Ct. at 417. The Court stated that from these facts Alone, the jury could infer that the plaintiff was responsible for the seaworthiness of the vessel. 352 U.S. at 373, 77 S.Ct. 415. The facts of this case are virtually identical. The facts of the other cases cited, which the majority does not attempt to answer, are, of course, even more compelling