**William H. MILLER, Appellant,**

v.

**PATTON–TULLY TRANSPORTATION COMPANY, INC., Appellee.**

No. 87–1155.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1988.

Decided June 30, 1988.

Jeanne Sathre, E. Alton, Ill., for appellant.

Bettina E. Brownstein, Little Rock, Ark., for appellee.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

William Miller sued Patton–Tully Transportation Company, Inc. for injuries he suffered while aboard Patton–Tully's barge, stating alternative claims of breach of warranty of seaworthiness under general maritime law and negligence of a vessel under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b) (1982) (amended September, 1984). After trial the district court[1] first found Miller was not a member of the crew of a vessel and therefore could not recover on grounds of unseaworthiness. Next, the court held Miller had not proven the vessel was negligent and therefore liable under the LHWCA. The court entered judgment for Patton–Tully on both counts. On appeal Miller attacks the findings that he was not a crew member and that various acts of the vessel were not negligent, and argues that the district court applied the wrong legal standard in ascertaining negligence.[2] We affirm as to the unseaworthiness count and two of the LHWCA claims of negligence, but remand for further findings as to negligence regarding the means provided for crossing between barges.

From January to March, 1984 Miller worked for Patton–Tully on a river-stabilization project, which involved paving the river bank and bottom with rock. Miller's job required him to work both on the river and on the shore. The testimony conflicts on the relative importance and extent of his water and shore duties. Miller himself testified that he spent over two-thirds of his time on the water, but his supervisor testified that Miller spent two-thirds of his time working on shore and that he was assigned to work on a bulldozer.

The operation Miller worked on involved use of different barges—rock barges, which transported the rock to the job site for paving, and a rig barge, which was used as the construction platform during the paving of the river bottom. The decks

---

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern and Western Districts of Arkansas.

2. Miller also argues that the district court erred in holding he was contributorily negligent; since we remand for further findings on the threshold question of whether the vessel was negligent, we need not reach this question.

of the barges were not of even heights, and to cross between the barges, the workers would step on a cable spanning three to four feet between the barges, while holding on to the higher barge. On the rig barge there was a large toolbox near the cable used for crossing between the barges. The toolbox had a counterweight hanging over its lid, which was there to make the lid easier to lift and to prevent the lid from snapping shut and injuring someone using the toolbox. While Miller was stepping on the cable to cross from the rock barge to the rig barge, he slipped and fell, hitting his head on the counterweight. He suffered injuries to his head, neck and back.

Miller sued Patton–Tully as owner of the vessel on which he was hurt. He pleaded a breach of the warranty of seaworthiness, and in the alternative, negligence of the vessel under the LHWCA, 33 U.S.C. § 905(b). The theories are mutually exclusive, since eligibility for LHWCA protection disqualifies a worker from claiming protection under the warranty of seaworthiness. 33 U.S.C. § 905(b); *Scindia Steam Navigation Co. v. DeLos Santos,* 451 U.S. 156, 165, 101 S.Ct. 1614, 1620–21, 68 L.Ed.2d 1 (1981). The district court found against Miller on both theories. On appeal, Miller attacks the district court's findings.

■ First, Miller claims he was a seaman or member of a vessel's crew and therefore excluded from LHWCA coverage under 33 U.S.C. § 902(3) (1982) (amended September, 1984) and entitled to the protection of the warranty of seaworthiness. He attacks the district court's finding that he was not a member of the crew of a vessel. A finder of fact can conclude that a workman was a member of a crew of a vessel if:

(1) the injured workman performed at least a substantial part of his work on the vessel or was assigned permanently to the vessel; and

(2) the capacity in which the workman was employed and the duties which he performed contributed to the function of the vessel or to accomplishment of its mission.

*Slatton v. Martin K. Eby Constr. Co.,* 506 F.2d 505, 510 (8th Cir.1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975); *Barrett v. Chevron, U.S.A., Inc.,* 781 F.2d 1067, 1072 (5th Cir.1986) (en banc).[3]

■ The district court found that Miller failed to show that he was permanently assigned to a vessel or performed a substantial part of his work on the vessel. The testimony the district court found most credible was that Miller was primarily a bulldozer operator and "spent only a fraction of his over-all work time on the rig barge and the various rock barges." *Miller v. Patton–Tully Transportation Co.,* No. H–C–85–124, slip op. at 4 (E.D.Ark. Dec. 31, 1986).

In reviewing findings of fact made by the district court, we may only set aside findings that are clearly erroneous. Fed.R. Civ.P. 52(a). Findings are clearly erroneous if a review of the record as a whole inspires a "definite and firm conviction" that the finding was a mistake. *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

The district court's findings were not clearly erroneous. There was evidence from which the district court could have found that Miller spent only a third of his time on the water and that some of this "on-water" time was not spent on the "vessel" or "fleet of vessels" in question. We cannot say the district court erred in refusing to find that Miller's on-water time constituted a "substantial" enough part of his work to qualify him as a seaman. *Cf. Barrett,* 781 F.2d at 1074 (reversing district court finding of seaman status where only 20–30% of plaintiff's work was on a vessel).

---

**3.** The Third and Seventh Circuits have further qualified the second part of this formulation, *see Johnson v. John F. Beasley Constr. Co.,* 742 F.2d 1054, 1062–63 (7th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985); *Simko v. C & C Marine Maintenance Co.,*

594 F.2d 960, 964–65 (3d Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979), and Miller argues the district court erroneously followed their lead. We have no need to consider that question here, since our inquiry in this case ends at the first part of the test.

Similarly, there was evidence that Miller was primarily assigned to the bulldozer, not the barge, and that although he did some work on Patton–Tully's barge, he did not live on the vessel or eat breakfast or supper there. On these facts we cannot say that the district court erred in finding Miller was primarily a land based worker and not permanently assigned to a vessel or fleet of vessels.

Second, Miller attacks the district court's holding that he was not entitled to recover under the LHWCA because he did not show the vessel was negligent. 33 U.S.C. § 905(b). Miller argues that Patton–Tully was negligent in three ways: in positioning the toolbox near the cable; in having the counterweight on top of the toolbox; and in failing to provide a safe method for crossing back and forth between barges. He attacks the district court's findings regarding negligence as contrary to the evidence and argues that the district court used an improper legal standard in arriving at its finding of no negligence.

"As a general rule, in maritime cases questions of negligence * * * 'are treated as factual issues which cannot be disturbed on appeal unless the resolutions are clearly erroneous.'" *Pluyer v. Mitsui O.S.K. Lines, Ltd.*, 664 F.2d 1243, 1247 n. 4 (5th Cir. Unit A 1982) (quoting *Valley Towing Serv., Inc. v. S.S. American Wheat, Freighters, Inc.*, 618 F.2d 341, 346 (5th Cir.1980)). Accordingly, we review Miller's attacks on the factual basis of the court's findings of no negligence under the clearly erroneous standard.

Miller alleges that the presence of the toolbox and counterweight created an unreasonably dangerous condition. The reasonableness of a condition is determined by "balancing the usefulness to the ship of the dangerous condition and the burden involved in curing it against the probability and severity of the harm it poses." *Johnson v. A/S Ivarans Rederei*, 613 F.2d 334, 348 (1st Cir.1980), *cert. denied*, 449 U.S. 1135, 101 S.Ct. 959, 67 L.Ed.2d 325 (1981). ▮ The district court weighed the alleged hazards of the placement of the toolbox and counterweight against the reasons

for having them where they were at the time of the accident. The court found that the toolbox was a necessary piece of equipment for the barge and that it was situated reasonably to keep it out of the way of the workers on the barge. Slip op. at 8–9. Similarly, the court found that whatever hazard was presented by the counterweight was justified by its important safety purpose of keeping the toolbox lid from snapping shut unexpectedly. Slip op. at 9. While Miller makes plausible arguments that the danger was unreasonable, we cannot say the district court's resolution of these factual issues was clearly erroneous.

Miller argues that the district court improperly used an assumption of risk analysis in concluding that the vessel was not negligent in providing a cable for crossing between the rig barge and rock barge or in positioning the counterweight. Any language arguably using assumption of risk with respect to the counterweight occurs after the district court, applying the proper standard for negligence, has already made a finding of no negligence, which we have held was not clearly erroneous. Therefore, if there is discussion of assumption of risk, it is mere dictum.

▮ However, with regard to the findings concerning the cable, it is much more difficult to ascertain whether the district court applied a negligence analysis free of assumption of risk considerations. *See generally, Scindia Steam Navigation Co.*, 451 U.S. at 166 n. 13, 101 S.Ct. at 1621 n. 13 (Section 905(b) excludes assumption of risk defense). In analyzing the cable allegations the district court stated:

> The evidence revealed that Miller used the same methods as all the other workers to move among the barges. When he was injured, Miller had stepped upon a tie-down cable and was pulling himself up to the rig barge when he slipped and struck his head on the counterweight. Although it involves a slight element of hazard in its execution, this appears to be the accepted method of moving between barges of uneven heights. However, Patton–Tully employee Joe Robertson testified that there was a ladder 16 feet

in length on the barge and that Miller knew of its presence there. Inasmuch as Miller at the time of the accident had worked on and around barges for nearly 16 years, the Court is not persuaded that Miller did not know that alternative methods for boarding a barge existed. If Miller was incapable of safely getting up onto the rig barge in the manner he used, it was up to him to utilize some other available means. That he chose not to cannot be considered negligence on the part of Patton–Tully.

Slip op. at 10.

Miller argues that we should reject this finding, conclude there was negligence, and order that judgment be entered in his favor. Patton–Tully argues that these findings are sufficient to defeat the existence of negligence. The parties agree that the applicable legal principles are those stated in *Scindia* and *Johnson v. A/S Ivarans Rederei.* We believe that the factual issues have not been completely analyzed under the applicable legal principles, since we do not see a clear finding either that there was negligence or that there was none. We are also satisfied that in its treatment of the cable claim the district court may have considered to some degree Miller's own negligence. Additional examination of the claim of negligence with regard to the cable issue may well necessitate further consideration of the issues of proximate cause and Miller's own negligence. We express no thought as to the ultimate conclusion of these issues, but believe that our best course is to remand to the district court for further findings with respect to the cable under the admittedly applicable legal principles.

We affirm the district court's findings as to the unseaworthiness count and the LHWCA claims of negligence based on the toolbox and counterweight. We remand to the district court for further findings with respect to the negligence claim based on the means provided for crossing between the barges. We retain jurisdiction of this appeal, and the district court's further findings of fact and conclusions of law on this final issue shall be filed with the Clerk of this Court.