**Ralph A. BRYANT, Jr., Plaintiff,**

v.

**GATES CONSTRUCTION
COMPANY, Defendant.**

**Civ. A. No. 88–545 MMS.**

United States District Court,
D. Delaware.

April 12, 1990.

Richard A. Zappa, and Joseph J. Rhoades, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Jeffrey S. Goddess, of Saul, Ewing, Remick & Saul, Wilmington, Del., of counsel. James A. Yulman, and Timothy J. Mahoney, of Krusen Evans and Byrne, Philadelphia, Pa., for defendant.

MURRAY M. SCHWARTZ, Senior District Judge.

This is an action by Ralph A. Bryant, Jr. against his employer, Gates Construction Corporation ("Gates"), under the Jones Act, 46 U.S.C.App. § 688, and general maritime law. Bryant seeks recovery for injuries sustained while employed as a crane operator on defendant's barge "Gates 196". Gates moved for summary judgment arguing that Bryant was not a seaman, but rather a land-based construction worker such that his remedies are limited to, and barred by, the provisions of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq. Bryant filed a motion for summary judgment that Gates be estopped from challenging his seaman status. Thus, while each party has filed a motion for summary judgment, they are not cross-motions because the motions are predicated on different aspects of each party's position. This court has federal question jurisdiction presumably pursuant to 28 U.S.C. § 1333.[1]

The issues presented arise from the inferences that can be drawn from the facts which are largely undisputed. There are two issues to be addressed in this decision: (1) based on the pre-lawsuit conduct of the defendant should Bryant be required to prove his seaman status at trial, i.e. is defendant estopped to deny plaintiff's seaman status, and (2) are there any facts from which a jury could reasonably infer that Bryant was a seaman. I conclude defendant is not estopped and Bryant is not a seaman for Jones Act purposes.

I. FACTUAL BACKGROUND

Since 1967 plaintiff has been a member of the Union of Operating Engineers, Local 542. (Deposition of Ralph A. Bryant, [hereinafter "Bryant Dep."], Dkt. 23A, Exhibit 4 at 12). Bryant has been sent out by his union to operate cranes, pile drivers, bulldozers, front-end loaders, rubber tired hoes, forklifts and road machine rollers. (Bryant Dep. at 15–16).

At the time of the accident, defendant was under contract with Delmarva Power & Light Company (hereinafter "DP & L") to reconstruct a damaged transmission line tower ("Tower 97" or "transmission tower") located in the Delaware River. (Affidavit of Fred MacLennan [Construction Superintendent for Gates, hereinafter "MacLennan Afft."], Dkt. 23A, Exhibit 4 ¶ 2). Gates hired Bryant from the Union of Operating Engineers to work on the transmission tower. (MacLennan Afft. ¶ 5). Bryant was initially assigned to the vessel Gates 169 as a heavy crane operator and then later in the same capacity to the vessel Gates 196 on which the accident occurred. (Bryant Dep. at 34–35, 40).

Both barges on which plaintiff worked were capable of limited, crawling movement by means of a system of anchors and winches. (Bryant Dep. 36–37). There were four anchors on each barge that were placed in the river bed by the crane once the barge was towed into its general working position. (MacLennan Afft. ¶¶ 14, 27). Once the anchors were set, the barge was moved short distances, less than 100 feet, by means of the deck winches. (MacLennan Afft. ¶ 18).

Gates 196 is 196 feet long, 48 wide and has a draft of 12 feet. (MacLennan Afft. ¶ 31). In order to provide a running surface for the crane, it was fitted with a decking of heavy timbers on the forward end of the barge. (MacLennan Afft. ¶ 32). The crane was not permanently attached to the barge, except when it was lashed to the deck during transit. (MacLennan Afft. ¶ 33). When Gates 196 was brought to the vicinity of the construction site, it was tied to a mooring so that equipment could be set up on its deck. (MacLennan Afft. ¶ 24).

1. Plaintiff's complaint does not contain a statutory cite or spell out its jurisdictional basis.

Bryant helped to set up the crane. (Bryant Dep. at 41).

The crane was used initially to let the anchors over the sides onto the river bed. (Bryant Dep. at 41). In addition, once or twice thereafter, the eyes on the anchor buoys were attached to the crane's hook and plaintiff was directed to adjust their position by a member of the dockbuilders union who functioned as a signalman. (MacLennan Afft. ¶ 20; Bryant Dep. at 36–39). On August 10, 1987, plaintiff was injured when the crane, which he was operating, fell over onto the deck of the barge. (Bryant Dep. at 33, 86, 95–116; MacLennan Afft. ¶ 28). At the time of the accident, plaintiff was in the process of lifting a foundation piling from a supply barge for placement in the falsework which was at the forward end of Gates 196. (MacLennan Afft. ¶ 28).

## II. DISCUSSION

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if, upon a review of the materials properly before the court, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment may be granted in spite of some alleged factual disputes between the parties because Rule 56(c) requires only that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While a court must view the evidence in the light most favorable to the non-moving party, *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983), the court must grant summary judgment "against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986).

The issue of seaman status has been described as a mixed question of law and fact. Its resolution requires the application of legal principles to specific underlying facts. Although the issue of seaman status is normally a question for the jury, summary judgment is proper on the issue of seaman status where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences. Summary judgment has been found appropriate wherein the judgment required a determination of one or more of the various factors needed to establish seaman status. *See, e.g., Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir.1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Bernard v. Binnings Const. Co.,* 741 F.2d 824 (5th Cir.1984); *Leonard v. Exxon Corp.,* 581 F.2d 522 (5th Cir.1978), *cert. denied,* 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 397 (1979); *McNeill v. J.E. Brenneman Co.,* 1986 A.M.C. 2241, 1983 WL 2176 (E.D.Pa.1983), *aff'd* 732 F.2d 146 (3d Cir.1984); *Clark v. Traylor Bros. Inc.,* 661 F.Supp. 159 (W.D.La.1987); *Presley v. Healy Tibbits Const. Co.,* 646 F.Supp. 203 (D.Md.1986).

Where, as here, the facts upon which the summary judgment on seaman status is based are undisputed the function of the Court is to "review them to determine whether reasonable persons might draw conflicting inferences." *Bertrand v. Int'l Mooring & Marine,* 700 F.2d 240, 244 (5th Cir.1983). Summary judgment on the issue of seaman status is appropriate only where there is complete absence of probative evidence to support a jury finding that the claimant was a seaman. *Fuller v. Pacific Gulf Marine, Inc.,* 1988 A.M.C. 470, 1987 WL 17234 (E.D.Pa.1987). The opinion will first address the issue of estoppel and then the issue of Bryant's seaman status under the Jones Act.

### B. *Estoppel*

█ Plaintiff contends that the defendant should be estopped from "raising a defense it assiduously maintained did not exist prior to suit." (Dkt. 29 at 21). For more than a year prior to suit, Gates took the unequivocal position that plaintiff was a seaman whose only entitlement was for

maintenance and cure and whose only legal redress was under the Jones Act. Plaintiff asserts reliance on Gates's representation and conduct to his disadvantage. Plaintiff maintains that estoppel should attach to defendant's prior position even if it was "mistakenly advanced out of ignorance of the law or as a result of negligence if an advantage over one's adversary was taken as a result." (Dkt. 48 at 34). Plaintiff asserts prejudice in that he has not received payments under LHWCA if in fact he is judged to be a harbor worker. On the other hand, if plaintiff is determined to be a seaman, he asserts prejudice in that he was required to devote considerable time and money investigating and preparing his Jones Act suit. However, plaintiff was never dissuaded from filing a LHWCA action and, in any event, the LHWCA filing limitation is tolled, under 33 U.S.C. § 913(d), for one year from the resolution of the Jones Act claim. Likewise, any payment difference between the maintenance and cure which Bryant has so far received from Gates, and a recovery under LHWCA will be reflected in and adjusted by the ultimate benefits received. Plaintiff's "belt tightening" because of failure to receive the LHWCA payment, while inconvenient and evokes sympathy, is insufficient to create an estoppel. Thus, the Court finds that beyond the fact that his seaman status is challenged, where it was not before, there is no disadvantage to the plaintiff which would estop defendant from raising the issue of seaman's status.

█ There is also a further bar to plaintiff's prevailing on his estoppel argument. The requirement that a Jones Act claimant be a "seaman" is jurisdictional. *See Hines v. Saylor Marine Corp.*, 615 F.Supp. 33 (D.C.Ga.1985); *see also Bernard v. Binnings Construction Co.*, 741 F.2d 824 (5th Cir.1984); *Powers v. Bethlehem Steel Co.*, 477 F.2d 643 (1st Cir.1973). It follows plaintiff's position runs counter to the principle that a court must dismiss an action whenever it appear that subject matter jurisdiction is lacking. The duty of the district court to undertake this jurisdictional inquiry has been codified in the Civil Rules which provide "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

The Supreme Court has made it clear that subject matter jurisdiction can never be created by estoppel. *See, e.g., Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the Court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868). "Once a court determines it is devoid of power to hear a claim, nothing that the parties do will confer the requisite authority needed to decide that case or controversy." *Locals 1242 and 1332, International Longshoremen's Association, AFL–CIO v. Portside Refrigerated Terminals, Inc.*, 602 F.Supp. 17, 18 (E.D.Pa.1984).

The Court holds that plaintiff may not estop defendant from challenging his seaman status in that the question of seaman status relates not only to the merits of a claim under the Jones Act, but also to the court's jurisdiction.

### C. *Determination of Seaman Status Under the Jones Act*

The Jones Act, 46 U.S.C.App. § 688, provides in relevant part:

> Any seaman who shall suffer personal injury in the course of his employment may ... maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply....

Only a seaman may invoke the Jones Act. Thus, the pivotal question raised by the defendant's motion is whether, as a matter of law, Bryant qualifies for seaman status. The law draws a distinct line between seaman and harbor workers. "He who is a seaman, is not a harbor worker, and he

who is a harbor worker is not a seaman." *Presley v. Healy Tibbits Const. Co.*, 646 F.Supp. 203, 205 (D.Md.1986) (citing *Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946)).

The Third Circuit appellate court extensively explored the elements that constitute seaman status in *Griffith v. Wheeling–Pittsburgh Steel Corp.*, 521 F.2d 31 (3d Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). The court identified three essential elements to qualify for seaman status:

(1) The worker must be associated with a "ship in navigation";

(2) He must have a more or less permanent connection with the ship; and

(3) He must be aboard primarily to aid in its navigation.

*Griffith*, 521 F.2d at 36, following 2 M. Norris, *The Law of Seamen* § 668, at 301 (3d ed.1970). Each of the three elements of the test must be satisfied in order for the worker to be entitled to pursue a Jones Act remedy. The failure of plaintiff to establish any one of the three elements puts the would-be seaman out of Court.

In this case, Gates has conceded that factual issues exist which preclude the determination of the permanency of Bryant's connection to the vessel. (Dkt. 45 at 19). However, Gates contends that Bryant cannot satisfy either of the two additional elements of the *Griffith* test, thereby precluding maintenance of a Jones Act suit. First, Gates contends that the crane barge was not "in navigation" for Jones Act purposes in that "the vessel [was not] engaged as an instrument of commerce or transportation on navigable waters." *Griffith*, 521 F.2d at 37. Second, Gates contends that Bryant was aboard the vessel as a crane operator to assist in the repair of Tower 97, not primarily to "aid in [the vessel's] navigation." *Id.* at 36.

### 1. Was the Barge a Vessel "In Navigation"?

The "in navigation" requirement "means that the vessel [must be] engaged as an instrument of commerce or transportation on navigable waters." *Griffith*, 521 F.2d at 37. It is well settled that a barge may be a vessel within the meaning of the Jones Act, *Producers Drilling Co. v. Gray*, 361 F.2d 432 (5th Cir.1966). However, to be a vessel in navigation within the meaning of the Jones Act, the purpose and business of the structure to some reasonable degree must be the transportation of passengers, cargo, or equipment from place to place across navigable waters. *Johnson v. John F. Beasley Construction Company*, 742 F.2d 1054, 1063 (7th Cir.1984); *see also Griffith*, 521 F.2d at 37. Special purpose structures that are something more than just a means of transport on water, may also qualify as vessels under the Jones Act, *Offshore Company v. Robison*, 266 F.2d 769, 772 (5th Cir.1959), and a vessel can remain "in navigation" even if moored to a pier, in a repair yard for periodic repairs, or while temporarily attached to some object. *Griffith*, 521 F.2d at 37.

Defendant does not question that the ocean-going movement of the equipment to the worksite comprised transportation. (Dkt. 23 at 10). However, defendant contends that the determination of "in navigation" is limited by the business in which the vessel is engaged at the time of the plaintiff's association with it. *The Robert W. Parsons*, 191 U.S. 17, 30, 24 S.Ct. 8, 19, 48 L.Ed. 73 (1903); *Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999, 1001–02 (5th Cir.1973), *cert. denied*, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973) ("[I]t is clear that at the time of the mishap the craft was secured to the appellee's dock and engaged in its primary function as a stationary construction platform."); *United States v. Moran Towing & Transportation Co.*, 374 F.2d 656, 662–64 (4th Cir. 1967) ("The dry dock ... does not retain its character when it has been severed from its attachments to the land and when, under tow, it is moving over navigable waters equipped, as this one was, with a vessel's navigation lights."). *See, Bernard v. Binnings Const. Co.*, 741 F.2d 824, 829 (5th Cir.1984) ("[A] structure whose purpose or primary business is *not* navigation or commerce across navigable waters may nonetheless satisfy the Jones Act's vessel requirement if, at the time of the worker's

injury, the structure was actually engaged in navigation.") (emphasis in original) (citations omitted).

Defendant argues that in a similar situation the court rejected the contention that the rig was a Jones Act vessel. *McNeill v. J.E. Brenneman Co.*, 1986 A.M.C. 2241, 1983 WL 2176 (E.D.Pa.1983), *aff'd*, 732 F.2d 146 (3d Cir.1984). In *McNeill*, the barge carried machinery and materials when it was brought to the work site on the Cooper river by a tugboat. The Court stated:

> It is clear that the JUPITER was not engaged as an instrument of commerce or transportation. It was simply a work platform. The rig had no rudder or propeller and was towed by tugboat to the State Street Bridge site to which it was moored. Only at the construction site could the JUPITER be maneuvered at all under its own power, and then to only a very limited degree. Moreover, the purpose of this slight mobility was to enable it to drive piles, not to deliver anything. This movement, of course, was a necessary part of its regular operation. While there was evidence that the JUPITER was used to carry materials to the site, unquestionably its primary purpose was not to carry men or materials from one place to another. Thus, the extremely limited movement of the rig, coupled with its clearly ostensible purpose of driving piles, allows only one conclusion: the JUPITER was neither engaged as an instrument of commerce or transportation on navigable waters nor was it brought to the construction site for that purpose.

*Id.* at 2242–43. The limited movement on the part of the JUPITER was accomplished by paying out and hauling in cables attached to deck winches, as was the movement accomplished by the Gates 196. In *McNeill*, the Court noted that "this type of incidental movement is to navigation what a bird's hopping around its cage is to flying." *Id.* at 2249.

Defendant argues that numerous other cases support that conclusion. In *Buna v. Pacific Far East Line, Inc.*, 441 F.Supp. 1360 (N.D.Cal.1977), the Court granted defendant's motion for summary judgment with respect to a paint float carrying equipment and supplies for men performing painting and repair work on ships docked at a pier. The court held that the limited lateral movement around the vessel was simply part of its special function and did not show that the structure operated as a vessel in navigation. *Id.* at 1364.

In addition, Defendant relies on the reasoning in *Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999 (5th Cir.1973), *cert. denied*, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973). In that case, the Court held that a flat deck construction barge used for the fabrication of concrete barges was not a vessel for Jones Act purposes. The barge had no motive power, but was capable of some lateral movement at the work site. The Court reasoned that the "[m]ere floatation on water does not constitute a structure a 'vessel' for purposes of salvage nor warranty of seaworthiness. The elements of risk and exposure to the hazards of the sea, necessary for the operation of and common to both principles, is absent upon floating dry docks." *Id.* at 1001.

Plaintiff argues that Gates 196 was clearly a vessel in navigation under the Jones Act in that it was used to transport the crane across the Atlantic to the Delmarva worksite and then again from the pier to Tower 97. In addition, once the barge arrived at the worksite, plaintiff asserts that the barge was used to transport the equipment, crew and materials around the worksite such that the necessary repairs could be made. (Dkt. 29 at 33). However, it is uncontradicted that no construction materials were carried to Tower 97 on Gates 196. (MacLennan Afft. ¶ 15).

Plaintiff seeks to have Gates 196 attain Jones Act vessel in navigation status by virtue of the fact that it was situated in navigable waters. Plaintiff asserts that to travel to and from the barge took 25 to 45 minutes depending on the tides. (Bryant Dep. at 130). In addition, the contract between DP & L and Gates indicates that there were to have been lookouts for marine traffic in the river.

Thus, plaintiff distinguishes defendant's authorities, contending that in those cases the structure on which the worker was injured was either moored to a pier, secured to land, or otherwise in such close proximity to the land as to be deemed an appendage thereof. Plaintiff asserts that although the primary function of a floating structure may not be transportation, where service on the structure exposes its occupants to the hazards or perils of the sea, or where the structure usually functions at some distance from the shore, the structure qualifies as a vessel in navigation under the Jones Act. *See Powers v. Bethlehem Steel Corporation*, 477 F.2d 643, 647 (1st Cir.1973); *Buna v. Pacific Far East Line, Inc.*, 441 F.Supp. at 1363. Plaintiff argues that the Gates 196 was not an appendage to the land. The Gates 196 was a 196-foot barge located at a considerable distance from the shore on tidal waters with significant ocean-going traffic. Plaintiff contends the barge was exposed to the hazards and perils of the sea on a daily basis, because of the close proximity of the site of the repairs to the shipping lanes. Vessels frequently passing the barge were of sufficient size and created wake to warrant suspension of work and securing of equipment on the deck. The Coast Guard had alerted all passing vessels to slow in approaching the worksite and required the barge to display marker lights which warned passing vessels of an obstruction to navigation. *See* 33 C.F.R. § 64.20.1 (1989); *see also*, the Gates DP & L Contract, Dkt. 29A at 11–12. The traffic on the Delaware River does not equate with the hazards of blue water navigation. Therefore, plaintiff's argument that Gates 196 was in navigation by reason of hazards on the Delaware River is rejected.

In *Johnson v. John F. Beasley Construction Co.*, 742 F.2d at 1064, the Court held that a steel decked floating barge on which a crane had been installed was a vessel in navigation. The barge in that case had no motive power of its own, no

steering capability, no cabins or galleys, nor fixed navigational lights. The workers on that vessel were transported to and from the barge daily. *Id.* at 1056. The court found that:

> The primary role of the JFB–15 was to provide a site for the assembly of the control house and to assist in the construction of the lift section on top of the falsework. The JFB–15 was also used to transport iron to the work site. On these occasions, a tugboat would push the barge downstream ... Appellant and his crew would assist with loading and preparing lines to shore. Thereafter, the tugboat would push the barge upstream.

*Id.* at 1056. The court reasoned that since the barge was used on occasion to transport steel materials on the river,[2] and had not been withdrawn from navigable waters at the time of plaintiff's injury, it fell within the Jones Act definition of a vessel "in navigation." *Id.* at 1063. *See also Salgado v. M.J. Rudolph Corporation*, 514 F.2d 750, 755 (2d Cir.1975) (Although the barge served primarily as a work platform, it was "not a raft tied to the shore so as to assume the characteristics of a floating dock.").

In addition, plaintiff relies on *Brunet v. Boh Brothers Construction Co.*, 715 F.2d 196, 197 (5th Cir.1983), where the court, in concluding that the status of the barge was a jury question, stressed that the barge, by necessity, was designed to transport the pile driving crane across navigable waters that could not be reached by land-based pile drivers. *Id.* at 198. The Court rejected the argument that this transportation function could only be viewed as incidental to the barge's pile driving tasks. In that case, "[t]he barge had been moved to [the] job site by tugboats and had been so moved within the Gulf region four times during the six months preceding the accident." *Id.* at 197.[3] While it agreed that the barge was used more often to support the crane than to transport it, the court could not as

---

**2.** Gates 196 was not used to transport materials to the worksite. (MacLennan Afft. ¶ 15).

**3.** One year later the appellate court of the Fifth Circuit distinguished *Brunet* on this precise basis. *Bernard v. Binnings*, 741 F.2d 824 at 833.

a matter of law, conclude that the barge was not a vessel in navigation. *Id.*

In *Brunet,* the Fifth Circuit distinguished *Cook* as a deviation from the general practice of permitting Jones Act issues to be submitted to the jury. The *Brunet* court followed the admonition in *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959) that:

> Attempts to fix unvarying meanings [having] a firm legal significance to such terms as "seaman," "vessel," "member of the crew," must come to grief on the facts. These terms have such a wide range of meaning under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case.

*Id.* at 779. I will also follow that admonition.

In this case, it is not contested that Bryant was not aboard when the barge was brought to the site so that, for the purposes of determining his status, that first level of transportation is irrelevant. (Dkt. 23 at 14–15). However, Bryant was aboard the vessel when it assumed its position alongside Tower 97 and as the barge "crawled" around the worksite by means of the winches and crane.

In addition, it is not contested that the Gates 196 had no crew quarters, no eating facilities, and no sanitation facilities except a portable toilet. (MacLennan Afft. ¶¶ 36, 37, 40). Although it was load line certified by the Coast Guard for ocean transit, its certification required that it be unmanned during such use. (MacLennan Afft. ¶ 44). It had no propeller, no rudder, nor other method of steering. It had no wheelhouse, no radar, nor any other navigational devices aboard. It was brought by tugboat to the Tower 197 construction site and at such times was controlled by the crew of the tug who remained aboard the tug. (MacLennan Afft. ¶ 14). While under tow, the Gates 196 was equipped with portable navigation lights. (MacLennan Afft. ¶ 14(k)). Once at the construction site, the navigation lights were replaced with marker lights which warned other vessels of an

obstruction to navigation. (*Id.*) At all times the plaintiff was aboard, it was marked as an obstruction to navigation.

The only movement during the time plaintiff worked on the vessel was accomplished through a system of anchors and winches which permitted the barge to "crawl" between its anchorage or mooring points. This movement served the purpose of bringing the crane and other equipment within range of doing its work, reinforcing the tower foundation. The materials were transported to the site on separate barges on which the plaintiff did not work.

Reduced to its basics, defendant urges the law as applied to the facts mandates the conclusion that Gates 196 was not in navigation at the time of Bryant's accident. However, close examination of the cases on which defendant relies undercuts defendant's assertion. Four of those cases, *Bernard v. Binnings Const. Co., Inc., supra* (small 5 foot work punt working on shore-based project); *Leonard v. Exxon Corp.,* 581 F.2d 522 (5th Cir.1978) (barges lashed together attached to shore); *Powers v. Bethlehem Steel Corp., supra* (25 foot raft engaged in repair of defective pilings on pier); and *Atkins v. Greenville Shipbuilding Corp.,* 411 F.2d 279 (5th Cir.1969) (floating dry dock), all involved either very small work platforms and/or work at or adjacent to shore. Given that Gates 196 was 196 feet long and working in the Delaware River, the above four cases constitute weak precedent.

Three cases relied upon by Gates are more persuasive and not readily distinguishable from Gates 196 for purposes of the "in navigation" requirement: *McNeill v. J.E. Brenneman Co., supra* (pile driving work platform driving piles in the Cooper River); *Clark v. Traylor Bros. Inc.,* 661 F.Supp. 159 (W.D.La.1987) (crane barge offshore on the Mississippi River); and *Presley v. Healy Tibbits Const. Co.,* 646 F.Supp. 203 (D.Md.1986) (pile driving barge working in Baltimore Harbor). Against the weight of the above three cases is *Brunet v. Boh Bros. Const. Co., Inc., supra* (pile driving barge driving piles on marshland). In reversing the district

court's grant of summary judgment to the employer, the court noted the barge had transported the crane four times within a six-month period, but that it had been moored at the worksite of the injury for several months. As I read the summary judgment record, it is not known how long Gates 196 was at the Tower 97 site prior to the accident. Further, the record is silent as to whether Gates 196 was to continue in service as a crane barge after completion of the work at Tower 97.

Although the summary judgment record could be construed to indicate that the barge Gates 196 was primarily a construction platform, a possible conflicting inference coupled with unknown facts persuade me the court should not hold as a matter of law that Gates 196 was not engaged in navigation in determining seaman status at this stage of the proceedings.

### 2. Primarily to "Aid in [the Vessels'] Navigation

The third element of the *Griffith* test has been interpreted to mean that the injured worker must have performed a "significant navigational function." *Simko v. C & C Marine Maintenance Co.,* 594 F.2d 960, 965 (3d Cir.1979). The court stated:

> The clear import of our opinion in *Griffith* is that a maritime worker who does not actually go to sea but who is injured while performing duties on a navigable vessel must establish that he performed significant navigational functions with respect to that vessel in order to recover under the Jones Act.

*Id.* at 964–65.[4]

 Defendant contends that even assuming the crane barge was in navigation, plaintiff was on board the vessel as a crane operator and only incidentally did he aid in navigation of the vessel. Defendant maintains that the occasional movement of the anchors was not a "navigational function" and, even if it could be considered such, it was never the primary focus of plaintiff's work on the barge. On occasions when the anchors were moved, others attached the barge's anchors to the crane's hook, and plaintiff was directed to move the crane hook in order to reposition the anchors. He made no decisions regarding such placement and the vast majority of the time, the vessel could be repositioned without the assistance of the crane. Thus, defendant concludes that plaintiff did not perform any navigational function aboard the vessel, much less any significant one.

Plaintiff conceded that his job aboard the vessel was to operate the crane:

Q. Who operated the deck winches?

A. There was one operating engineer and one pile driver.

Q. That was not you. Your job was—

A. Operate the crane.

Q. The crane and the crane only?

A. Yes.

(Bryant Dep. at 38–39). Plaintiff maintains that maneuvering the barge over small distances around the transmission tower was necessary to facilitate the repair work that he had been hired to perform. When questioned with respect to his role as a seaman, Bryant testified:

A. Well, you know, I boarded Gates' crew boat and was placed on Gates' barge there, and I helped moved [sic] the barge, operating the crane, and all phases, you know, of the barge operations out there. You know, you are involved with it because you do what has to be done.

Q. Well, you talked to Mr. Mahoney about a couple of things. They were the setting of anchors.

A. Yes.

Q. And the moving of the anchor cables.

A. Yes. Well, you know, you move, the cables around, the obstructions in front of you, to get the work barge where it has to be.

(Bryant Dep. at 130). In addition, the summary judgment record reveals that the

---

**4.** The *Simko* court thus distinguished between blue water seaman and shore based workers such as Bryant. The former need not prove they performed a navigation function for Jones Act seaman status. *See McNeill v. J.E. Brenneman Co.,* 1986 A.M.C. 2241, 1983 WL 2176 (E.D. Pa.1983), *aff'd,* 732 F.2d 146 (3d Cir.1984), and cases cited therein.

cranes were used to move small pumps around the deck of the vessel as ballasting. (Affidavit of Bryant [hereinafter "Bryant Afft."], Dkt. 29A at 22 ¶ 20). On one occasion, the crane was used to hold a jet pipe to pump water into one of the ballasting tanks. (Bryant Afft. ¶ 20). When taking a break from operating the crane, plaintiff assisted in fueling up motors, repairing air compressors, changing oil and cleaning and changing filters. (Bryant Afft. ¶ 21). Plus, plaintiff contends that he was "on call at all times" to assist others who were responsible for navigation. (Bryant Afft. ¶¶ 4, 10).

*Simko v. C & C Marine Maintenance Co.*, 594 F.2d at 964, directs that a court should focus on the "nature of the duties performed by the Jones Act claimant" in determining whether the worker is "aboard primarily to aid in navigation." In *Griffith* the plaintiff's primary duties involved the handling of cargo. In addition, he also threw lines from one barge to another when the barges were being "rounded." The *Griffith* court held "[a] worker upon a barge whose primary duties involve the handling of cargo rather than the carrying out of required navigational responsibilities is a longshoreman rather than a seaman." The plaintiff's navigational function was too insignificant to establish seaman's status given that his primary duty was that of a longshoreman handling cargo.

Numerous other cases support the conclusion that the non-blue water plaintiff must perform significant navigational duties in order to qualify as a Jones Act seaman. In *Simko*, the plaintiff was a laborer whose function was to assist in the cleaning of barges moored to a crane barge. The appellate court had no difficulty concluding Simko's primary duties were that of a harbor worker who did not primarily assist in navigation and was therefore not a Jones Act seaman.

In *McNeill*, plaintiff was a second engineer or fireman whose primary duties were to fire and maintain steamboilers, portable air compressors, and welding machines. Plaintiff in *McNeill*, like Bryant in the matter sub judice, did operate deck winches to move the barge around the construction site only when he was not engaged in his primary job of operating steam equipment. The *McNeill* court concluded plaintiff's performance of his other duties were secondary and incidental to his primary activity precluding Jones Act seaman status.

In *Presley v. Healy Tibbits Const. Co.*, plaintiff was a pile driver working aboard a derrick barge in Baltimore harbor who assisted in moving the barge from one location to another. The *Presley* court held movement of the barge was incidental to Presley's primary function as a pile driver and denied him Jones Act seaman status.

In the present case, as in *McNeill*, "[p]laintiff's sole contribution to the movement of the rig consisted of moving a hand lever and a foot brake when told to do so by the dock builder." *Id.* at 2251. Bryant's movement of the anchors and cables was non-discretionary. After the anchor eye or cable had been attached to the cranes hook, Bryant positioned the crane at the direction of the foreman.

The movement of the barge to which plaintiff's contributed was insignificant and incidental to his primary function, which was to operate the crane. (Bryant Dep. at 131). A would-be seaman must show that his primary job was navigation, incidental quasi-navigational tasks in association with other work will not suffice. *Simko*, 594 F.2d at 964–65.

As the court reasoned in *Johnson v. John F. Beasley Construction Co.*, "[t]he persons who were involved with the transportation function ... were the operators of the work boats and tugs and the deckhands assigned to them.... [Appellant] was an ironworker hired as a foreman charged with constructing part of the bridge.... [That] does not make him a member of the crew charged with the operation and welfare of the JFB–15 as a means of transport on the water." *Id.* at 1064.

Bryant's employment as a heavy crane operator, when viewed in conjunction with his actual duties, reveals that he was nothing more than a land-based construction worker hired in this case to operate a crane

on a barge. Like the laborer in *Simko*, the longshoreman in *Griffith*, the operating engineer in *McNeill*, and the pile driver in *Presley*, Bryant is a land-based harbor worker and was aboard Gates 196 as a crane operator.

On these facts, the only reasonable conclusion is that the additional duties performed by Bryant were insignificant and merely incidental to his primary duty as a crane operator. Bryant did not assist primarily in navigation and therefore is not a Jones Act seaman. Accordingly, there is no evidentiary basis for submitting this issue to the jury.

For the reasons set forth above, Bryant's motion for summary judgment will be denied. Gates' motion for summary judgment will be granted and the complaint will be dismissed for lack of subject matter jurisdiction.