Jesse R. PRESLEY, et al.

v.

**HEALY TIBBITS CONSTRUCTION CO.**

Civ. No. JFM–84–3626.

United States District Court,
D. Maryland.

Oct. 22, 1986.

Michael Peroutka, and Stephen White, Baltimore, Md., for plaintiff.

James Edwards, and Frank Gorman, Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

Jesse R. Presley brings this action against his employer in connection with injuries which he suffered in the course of his employment as a pile driver while performing work aboard the derrick barge JULIE in the Baltimore harbor. American Home Assurance Company, defendant's compensation insurer, is a use plaintiff for $174,000 in compensation benefits and medical expenses which it has paid to plaintiff under the Longshore and Harbor Workers' Compensation Act. The present action is one for negligence under the Jones Act, 46 U.S.C. Section 688, or, alternatively, for negligence against defendant as vessel owner under the LHWCA, 33 U.S.C. Sections 901 et seq. Defendant has moved for summary judgment as to both claims.

The issues presented are (1) whether plaintiff is a seaman within the meaning of the Jones Act, and (2) whether plaintiff is entitled to bring a third party action against his employer under Section 905(b) of the LHWCA which provides an exception to an employer's exclusive liability under Section 905(a).

## FACTS

For virtually all of his employment career plaintiff has been engaged in what he describes as construction work. During the sixteen years preceding his injury which is the subject of this case, plaintiff had been employed as a pile driver. He is a member of the Pile Drivers' Union, a split off of the Carpenters' Union. He has never been a member of one of the maritime unions, has never held any licenses issued by the U.S. Coast Guard or other maritime governmental body and has never carried seaman's papers. Prior to this case he had from time to time performed pile driving work on or about the water but, as he testified on deposition, his work was "essentially the same as if you were on land, except you're doing it in the water."

Plaintiff suffered his injury on April 4, 1983. At the time of the injury he had been working aboard the JULIE each work day for approximately three months. The JULIE had been bareboat chartered by defendant to serve as a work platform. The project in which defendant was engaged and on which plaintiff was working involved removing mud and debris from around a trench containing water and electric lines that ran across the Baltimore harbor. After a portion of the trench had been "clammed out," sand scows were brought along side the JULIE and the sand was removed by a crane on the JULIE and placed as backfill around the utility lines.

The JULIE was ninety feet long and forty feet wide and had a large crane permanently mounted on it. There were no sleeping quarters, kitchen facilities or permanent heads on the JULIE. There were a "Spot-a-Pot" and a small shack to protect the workers from inclement weather. The workers brought their lunch with them and ate their noontime meal on the barge.

The JULIE was attached to the bottom of the harbor by four anchors. It could be moved by using deck engines to winch-in or pay-out along cables attached to the four anchors. In this manner it could be moved five hundred to six hundred yards forward or backward.

Each morning, plaintiff and the other workers would board the tug CAPTAIN MIKE (also bareboat chartered by defendant) and be taken to the JULIE. The JULIE would be tied to mooring dolphins away from the shipping channel each night and moved into position over the utility trench for that day's work. The JULIE was moved from time to time during the course of a day to a new position along the utility trench or to avoid interfering with ships

sailing up the channel. At the end of each workday, the JULIE was moved out of the shipping channel and tied to the mooring dolphins. The workers then returned to shore aboard the CAPTAIN MIKE. The trip in and out took approximately ten to fifteen minutes each way.

Plaintiff's primary duty was to perform pile driving work. He did from time to time perform various incidental jobs, including assisting in moving the JULIE, serving as a lookout for ships in the channel and handling lines when a scow came along side.

At the time of his injury plaintiff was standing on the JULIE with a mooring line in his hand waiting to tie up a scow. As the scow approached, one of the three lines running from the CAPTAIN MIKE to the scow broke free, recoiling and causing a metal hook at the end of the line to strike plaintiff on the back of his left hand. Plaintiff alleges that the crew of the CAPTAIN MIKE were negligent in the manner in which they had fixed the lines.

### DISCUSSION

I. *The Jones Act Claim*

■ A threshold question exists as to whether or not the question of plaintiff's seaman status can be resolved on summary judgment. Plaintiff argues that it cannot be because as a general matter "the issue of seaman and crew member status is a question of fact, and therefore a question for determination by the jury or other fact finder." 4 Larson, *Law of Workmen's Compensation* section 90.22 at 16–377; *see also* 6 Moore, *Federal Practice*, paragraph 56.17[35]. However, where the facts are not in dispute and the issue presented is the application to those facts of the legal tests governing status, summary judgment resolution is appropriate. *See, e.g., Waguespack v. Aetna Life & Cas. Co.*, 795 F.2d 523 (5th Cir.1986); *Lawrence v. Norfolk Dredging Co.*, 319 F.2d 805 (4th Cir.1963); *Mellon v. John F. Beasley Constr. Co.*, 1981 A.M.C. 549 (D.Md.1980), *aff'd*, 661 F.2d 924 (4th Cir.), *cert. denied*, 454 U.S. 1033, 102 S.Ct. 571, 70 L.Ed.2d 477 (1981).

Here, there are no core facts or factual inferences in dispute.

■ Two fundamental principles should first be stated to assure proper analysis. First, the law draws a clear and distinct line between seamen, on the one hand, and harbor workers on the other. He who is a seaman is not a harbor worker, and he who is a harbor worker is not a seaman. *See Swanson v. Marra Bros., Inc.*, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045 (1946). Here, if instead of becoming lost in the maze of casuistical distinctions made in some of the Jones Act cases, one steps back and asks the simple question "was plaintiff a 'harbor worker' or a 'seaman'?," the answer appears rather plain. Second, no public policy requires the flooding of land-based law by maritime remedies. The LHWCA provides a comprehensive compensation system for harbor workers for work-related injuries.

In *Whittington v. Sewer Constr. Co. Inc.*, 541 F.2d 427 (4th Cir.1976), the Fourth Circuit established a three-part test for determining the seamen status question:

> To qualify as a 'member of the crew' under the Jones Act, one must be more or less permanently attached to a vessel or fleet; he must be one whose duties serve 'naturally and primarily as an aid to navigation' in the broadest sense; and the vessel must be in navigation.

*Id.* at 436. This test is virtually identical to the test established by the Sixth Circuit in *Wilkes v. Mississippi River Sand & Gravel Co.*, 202 F.2d 383 (6th Cir.1953).

■ Although plaintiff did not sleep on board the JULIE and ate only one meal there on the days that he was working, it may be assumed that he was more or less permanently assigned to the barge. *See Spence v. Merritt, Chapman & Scott Corp.*, 966 A.M.C. 1826 (E.D.Va.1965). However, it cannot be said that his duties served "naturally and primarily as an aid to navigation." He was on board as a pile driver and only incidentally did he assist in the movement of the barge from one location to another. Furthermore, the pile

driving work which he was performing was not itself in aid of navigation. Rather, it was directed toward maintaining land-based utility lines. In this respect plaintiff's work is critically distinguishable from the work of a worker on a dredge whose purpose is to open, clear or modify sea channels. *Compare, e.g., Lawrence v. Norfolk Dredging Co., supra; Chesser v. General Dredging Co.*, 150 F.Supp. 592 (S.D.Fla.1957).

It is also clear that the JULIE was not "in navigation." The requirement that a vessel be in navigation "means that the vessel [must be] engaged as an instrument of commerce or transportation on navigable waters." *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 37 (3rd Cir.1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). Here, the purpose of the JULIE was not to transport people or articles of commerce but to serve as a base for repairing and maintaining land-based utility lines. It was simply a situs for construction work. Thus, the cases which hold that floating construction platforms are not vessels in navigation are applicable here. *See, e.g., Bernard v. Binnings Constr. Co. Inc.*, 741 F.2d 824 (5th Cir.1984); *Powers v. Bethlehem Steel Corp.*, 477 F.2d 643 (1st Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 160, 38 L.Ed.2d 106 (1973); *McNeill v. J.E. Brenneman Co.*,[1] 732 F.2d 146 (3d Cir.1984).

II. *The Third-Party Action Under the LHWCA*

Plaintiff contends that if this Court should hold that he is not a seaman under the Jones Act, he is entitled to bring a negligence action against defendant under Section 905(b) of Title 33. That section was enacted as part of the 1972 amendments to the LHWCA. The purpose of the amendments was to provide a comprehensive statutory restructuring of the liability of ship owners (and persons standing in the place of ship owners) against the background of the numerous progeny of *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). In *Sieracki* the Supreme Court had held that a shipowner owed a warranty of seaworthiness to injured longshoremen because they performed work traditionally done by seamen. In *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Court permitted a shipowner to recover on a claim of indemnity against the stevedore—which in the traditional tri-partite relationship employed the longshoremen—for an injury that was caused by the stevedore's breach of a warranty of workmanlike performance. In *Reed v. The YAKA*, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963) the Court extended the *Sieracki* rule to a situation where there was no independent stevedore and the longshoreman was employed directly by the shipowner. The Court reaffirmed this holding in *Jackson v. Lykes Bros., Steamship Co. Inc.*, 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967).

In the 1972 amendments Congress expressly modified the law in two respects. First, it overruled the holding in *Ryan Stevedoring* and extinguished the shipowner's indemnity claim against the independent stevedore/employer. Second, it substituted negligence for unseaworthiness as the standard for liability in third party actions. In the course of making these changes

---

1. This Court need not reach the question of whether plaintiff should have been deemed be a "seaman" if he had been injured while assisting in the movement of the JULIE itself during the winching-in or paying-out process. *Cf. Cook v. Belden Concrete Products, Inc.*, 472 F.2d 999, 1002 (5th Cir.), *cert. denied*, 414 U.S. 868, 94 S.Ct. 175, 38 L.Ed.2d 116 (1973). For purposes of clarity of analysis, however, this Court will state its view that this fact should not change the result. Aside from the fact that plaintiff still would not have been one whose duties "serve naturally and primarily as an aid to navigation," the fact that the JULIE was being moved from one location to another would not convert it into "an instrument of transportation" within the traditional and common meaning of the term. There is no reason to stretch that meaning, particularly since the rules governing seaman status are ones of insurance law where predictability is a legitimate policy concern. To the extent possible questions of "status" should be resolved by bright line tests and not on an ad hoc factual basis.

Congress reorganized the statute. What had been the entire Section 905 (providing for exclusivity of the statutory remedy against an employer) became Section 905(a) and Section 905(b) was added to govern the bringing of third party actions.

The first sentence of Section 905(b), as it stood after the 1972 amendments, generally conferred upon "a person [who suffers injuries] caused by the negligence of a vessel" the right to bring a third party action against a vessel.[2] It is undisputed in this case that as a bareboat charterer of the CAPTAIN MIKE, defendant falls within the statutory definition of "a vessel." Therefore, on its face the first section of Section 905(b) entitles plaintiff to bring this suit. Defendant argues, however, that under Section 905(b) only longshoremen, ship builders and repairmen may bring third party actions against their employers. Two Circuit Courts have rejected the same contention. *See Longmire v. Sea Drilling Corp.,* 610 F.2d 1342 (5th Cir.1980); *Smith v. Eastern Seaboard Pile Driving, Inc.,* 604 F.2d 789 (2d Cir.1979). This Court agrees with the conclusion reached in those cases.

■ In support of its position defendant points to the second and third sentences of Section 905(b). As defendant contends, these sentences are "special provisions" relating to the institution of third party actions by longshoremen, ship builders and repairmen. However, contrary to defendant's contention, these sentences do not themselves constitute the conferral of the right to sue but a limitation upon the right to sue conferred by the first sentence of Section 905(b). The term "such person" in the second and third sentences clearly refers back to the "person" mentioned in the first sentence. The section of the House Report explaining the addition of the second and third sentences confirms that they were intended to limit the right of longshoreman, ship builders and repairman to sue, not to create it. That section provides as follows:

The Committee has also recognized the need to deal with a case where a longshoreman or ship builder or repairman is employed directly by the vessel. In such case, notwithstanding the fact that the vessel is the employer, the Supreme Court, in *Reed v. S.S. Yaka,* 373 U.S. 410 [83 S.Ct. 1349, 10 L.Ed.2d 448] (1963) and *Jackson v. Lykes Bros. Steamship Co.,* 386 U.S. 371 [731] [87 S.Ct. 1419, 18 L.Ed.2d 488] (1967), held that the unseaworthiness remedy is available to the injured employee. The Committee believes that the rights of an injured longshoreman or ship builder or repairman should not depend on whether he was employed directly by the vessel or by an independent contractor. Accordingly, the bill provides in the case of a longshoreman who is employed directly by the vessel there will be no action for damages if the injury was caused by the

---

**2.** The statute was amended again in 1984 to provide a complete immunity from third party actions for employer/shipowners. The parties are in agreement that the 1972 amendments govern here. However, the legislative history of the 1984 amendments does cast light upon the issue here presented and provides support to plaintiff's position. *See* n. 3, *infra.*

The pertinent portions of Section 905(b), after the 1972 amendments and prior to the 1984 amendments, read as follows:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such a person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for

such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer.

negligence of persons engaged in performing longshoring services. Similar provisions are applicable to ship building or repair employees employed directly by the vessel.

H.R.Rep. No. 92–1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad. News 4698, 4705.

Defendant argues that to construe the first sentence, rather than the second and third sentences, as the provision conferring the right to bring a third party action against an employer/vessel has the anomalous effect of placing harbor workers other than longshoremen, ship builders and repairmen in a better position than longshoremen, ship builders and repairmen (the traditional *Sieracki* seamen) themselves. Defendant argues that since there is no express provision pertaining to such harbor workers which imposes a limitation comparable to those contained in the second and third sentences, those workers may bring a third party action against the employer/vessel even if one of their fellow employees performing a task the same as their own was the negligent party. This may or may not be so. "Admiralty law is judge-made law to a large extent." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 259, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521 (1979). By generative statutory construction of the kind which the Supreme Court has indicated is appropriate to fill in interstices in the legislative scheme, *see Reed v. YAKA, supra,* 373 U.S. at 414–15, 83 S.Ct. at 1352–53, a judicially crafted exception could be placed upon the first sentence of section 905(b) to prohibit a harbor worker other than a longshoreman, ship builder or repairman from bringing a third party action against an employer/vessel for injuries caused by the negligence of a fellow employee performing similar work. *See Smith v. Eastern Seaboard Pile Driving, Inc., supra,* at

796–797. In any event, plaintiff here is claiming negligence not by another pile driver, an operating engineer or other worker engaged in the clamming out and backfilling process but against the members of the crew of the tug CAPTAIN MIKE—workers performing a maritime task clearly distinguishable from the job being done by plaintiff.

Two other contentions made by defendant are likewise without merit.[3] First, it argues that to permit workers such as plaintiff to recover in actions such as these would be inconsistent with Congress's declared intent in enacting the 1972 amendments to place workers covered by the LHWCA in a position comparable to their land-based counterparts. The language upon which defendant relies refers to the substitution of negligence for unseaworthiness as the standard of liability, not to the identity of workers who may institute third party claims. Senate Rept. No. 92–1125, 92d Cong; 2d Sess., p. 10. Moreover, there is, in fact, no inconsistency present here because under land based law an employee may bring a third party action for negligence against his employer where his employer serves in another definable capacity. *See generally* 2A Larson, *Law of Workmen's Compensation*, Section 72.80.

Second, defendant contends that in *Edmonds v. Compagnie Generale Transatlantique, supra,* the Supreme Court read the first sentence of Section 905(b) as applying only to the traditional tri-partite relationship among longshoremen, stevedores and ship builders. The fallacy in this argument is that *Edmonds* was a longshoreman's case in which the Court was focusing upon an issue involving an overlap of the first and second sentences of Section 905(b). The Court did not address at all the question of whether the first sentence

---

**3.** Defendant also notes in passing that the fact that the second clause of the first sentence of Section 905(b) overrules the *Ryan* holding indicates that the first sentence as a whole was directed only to the traditional tri-partite relationship among employee, employer and vessel.

There is no question but that Section 905(b) could have been more sensibly and clearly written. However, the two clauses of the first sentence are independent, not dependent, ones, and there is no grammatical necessity compelling the conclusion for which defendant argues.

confers a right to bring a third party action upon a non-longshoreman harbor worker.[4]

 For these reasons defendant's motion for summary judgment will be granted as to the Jones Act claim and denied as to the LHWCA claim. A separate order effecting these rulings is being entered herewith.

---

4. The legislative history of the 1984 amendments also strongly supports plaintiff's position that the first sentence of Section 905(b) confers upon all persons covered by the LHWCA a right to bring a third party action against an employer/vessel. In reviewing the 1972 amendments Senate Rept. No. 98–81 stated that "negligence actions were allowed against the employer/vessel (see first sentence of ... Section 905(b))" and that the "scope of actionable negligence was narrowed" by the second and third sentences. Moreover, the 1984 amendments modified the third sentence of Section 905(b) to provide ship builders with complete immunity from third party actions. If defendant's reading of the 1972 amendments were correct, rather than modifying the third sentence to provide such immunity Congress could have simply deleted it.