**Richard SALA, Plaintiff,**

v.

**GATES CONSTRUCTION CORP., Defendant.**

**No. 92 CV 0204(SJ).**

United States District Court, E.D. New York.

Oct. 14, 1994.

See also, 155 F.R.D. 414.

dant, Gates Construction Corp., on a crane barge. Plaintiff has brought this action under Section 33 of the Merchant Seamen's Act of 1920, which is known as the Jones Act and, alternatively, Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, or in the alternative, for dismissal.

## BACKGROUND

Plaintiff, a dockbuilder, was injured on December 12, 1989 at Defendant's work site in Brooklyn, New York. Prior to his injury, Plaintiff had been employed by Defendant for two and a half years where his duties were exclusively in dock building. Pl.Dep. at 11, 16–17. Plaintiff had been employed as a dockbuilder for the previous twenty years by a corporation named Steers. Pl. Dep. at 11.

On December 12, 1989, Plaintiff was working on the rehabilitation of a dock owned by the New York City Department of Sanitation. Pl. Dep. at 17–18; 3(g) Statements of Pl. and Def. Two barges were brought by Defendant to the job site to support a crane and materials needed in repairing the bulkhead. These barges floated on the water; the crane barge was secured by anchors and the materials barge was secured by lines to the crane barge. 3(g) Statements of Pl. and Def. Each barge was equipped with life rings and navigational lights; however, neither barge could move under its own power but rather, had to be put in position by a tugboat.[1]

Plaintiff was an employee of the Defendant's and worked as part of a group of dockbuilders assigned to rehabilitate the bulkhead. Plaintiff arrived to work by car and walked over a gangway to the barges. Pl.Dep. at 59; 3(g) Statement of Pl. Each dockbuilder wore a life jacket while working on the barges. 3(g) Statement of Pl. When it was necessary to move the barges, the

Paul J. Matthews, New York City, for plaintiff.

John A.V. Nicoletti, Donovan Parry Walsh & Repetto, New York City, for defendant.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

## INTRODUCTION

Plaintiff, Richard Sala, is a dockbuilder who was injured while working for Defen-

---

1. Plaintiff's 3(g) statement asserts that the barges had engines, that no tugboats were used, and that dockbuilders assisted in moving the barges; however, Plaintiff's deposition denies each of these allegations. Pl. Dep. at 53, 54, 56, 59–60.

The crane barge could be shifted up to 100 feet by manipulating the anchor lines through the use of deck winches. Further distances required tugboats. Mastrola Aff. at 4–5.

workmen left the barges until they were secured to position. Pl.Dep. at 56, 59–60.

On December 12, 1989, Plaintiff was preparing timbers to be hooked up to the crane to be moved into position to construct a fender system. This involved tying a ¾-inch sling around the end of the timber so that it could be lifted and a "sleeper" placed beneath it so that another sling could be placed on the timber enabling the crane to lift and move the timber. Pl.Dep. at 18, 19, 24–27. Immediately prior to being injured, Plaintiff was on the materials barge directing the lifting of a timber by the crane. During this hoisting process, a timber struck the Plaintiff in the head. Pl. Dep. at 24–27. At no time during the hoisting or that entire day was the barge in motion. Pl.Dep. at 20, 53.

Medical attention was immediately sought for Plaintiff and it was determined that he had suffered a fractured skull and jaw. Pl. Dep. at 50. Plaintiff has been unable to return to work due to continued dizziness, disorientation, and hearing loss. Pl.Dep. at 42–52. Plaintiff alleges that he cannot drive and that he cannot return to his job because, given the jobs physical requirements, the dizziness and disorientation could put him at risk. *Id.*

## DISCUSSION

### I. Standard for Summary Judgment

■ A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Eastman Machine Co. v. United States,* 841 F.2d 469 (2d Cir.1988). No genuine issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). In making this determination, a court is required to view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ The party seeking summary judgment always bears the initial responsibility of demonstrating to the district court that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "[T]he materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. Thus, Defendant must show that the facts in this case mandate that they would prevail under the substantive law.

### II. The Jones Act Claim

#### A. Legal History of the Jones Act

##### 1. Pre–Wilander

The Jones Act was enacted by Congress in 1920 to provide seamen a cause of action in negligence for injuries received in the course of employment. *See* 46 U.S.C.App. § 688. Nowhere in the Act is seaman defined, and it is this term that has led to enormous confusion for litigants and courts. At first glance, such a term might appear to be obvious, but it is a maritime term of art that has eluded precise legal definition.

From the time of the Jones Act's passage until recently, cases that attempted to address claims under the Jones Act created a "myriad of standards and lack of uniformity in administering the elements of seaman status." Engerrand & Bale, 24 S.Tex.L.J., at 494, *quoted in McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 353, 111 S.Ct. 807, 816, 112 L.Ed.2d 866 (1991). In *Wilander,* the Supreme Court attempted to lead us out of this "labyrinth"; however, only a handful of courts have had the opportunity to apply *Wilander* and it remains to be seen whether the Court indeed accomplished its goal.

Prior to *Wilander,* the leading test for determining whether a worker was a seaman was that articulated in the Fifth Circuit case of *Offshore Co. v. Robison,* 266 F.2d 769 (1959). Under *Robison,* workers were deemed seamen if they 1) were assigned permanently to a vessel and 2) the worker's work contributed to the function of the vessel or the accomplishment of its mission. In articulating this test, the *Robison* court held that the Supreme Court had effectively abandoned its previous "aid in navigation" requirement and also held that a vessel was an expansive concept that included any object that floated upon water. *Id.* at 776.

Across the country, courts attempted to follow *Robison* until the Seventh Circuit in *Johnson v. John F. Beasley Construction Co.,* 742 F.2d 1054 (7th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985) articulated a further refinement of the *Robison* test. *Johnson* required that a worker had to make "a significant contribution to the maintenance, operation, or welfare of the transportation function of the vessel." *Id.* at 1063. Thus, under *Johnson,* a variety of claimants would not be compensated under the Jones Act. It was this conflict which forced the Supreme Court, in *Wilander,* to re-examine the case law surrounding the Jones Act.

### 2. McDermott Int'l, Inc. v. Wilander

Jon Wilander worked as a paint foreman on oil drilling platforms in the Persian Gulf. Wilander was assigned to a paint boat, *Gates Tide,* and was injured in the head when a bolt blew out of a pipe under pressure. In a suit under the Jones Act, the District Court for the Western District of Louisiana denied the defendant's motion for summary judgment. At a jury trial the jury found that Wilander satisfied the *Robison* test for seaman status. The Fifth Circuit affirmed the jury's determination and the Supreme Court affirmed.

In *Wilander,* the Supreme Court held that "[t]he key to seaman status is employment-related connection to a vessel in navigation." 498 U.S. at 355, 111 S.Ct. at 817. Although the Court agreed with *Robison* that the "aid in navigation" test was defunct, it continued to emphasize that "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission'"; in essence, "a seaman must be doing the ship's work." *Id.* It seems clear that the Court views this as the critical component and not the mere coincidence of working on or near water.

■ As part of its analysis, the Court reiterated that the LHWCA and the Jones Act were mutually exclusive since the LHWCA provided coverage for land-based employees. The *Wilander* court recognized that Congress, in passing the LHWCA, did not intend for a too-expansive interpretation of seaman under the Jones Act since the LHWCA encompasses those who work in positions affecting a vessel but do not owe allegiance to a vessel. Thus, the *Wilander* court confined the Jones Act seaman to its maritime boundaries, leaving land-based workers to seek compensation under the LHWCA's more expansive notion of seaman.

### 3. The Wilander progeny

Shortly after *Wilander* the Supreme Court had another opportunity to address a Jones Act claim in *Southwest Marine v. Gizoni,* 502 U.S. 81, 112 S.Ct. 486, 116 L.Ed.2d 405 (1991). The district court had improperly found that Gizoni was a harbor worker and did not aid in navigation, a test formally jettisoned in *Wilander.* The Court reversed the district court's decision to grant summary judgment because there remained questions of fact as to whether the platforms were vessels in navigation and whether Gizoni had sufficient connection to the platforms to qualify as a seaman.

In *DiGiovanni v. Traylor Brothers, Inc.,* 959 F.2d 1119 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992) the court held that a carpenter/ship repairer working on a crane barge was not a seaman because the platform upon which he was working was not a vessel in navigation. The court reasoned that "if a barge, or other float's 'purpose or primary business is *not* navigation or commerce,' the workers assigned thereto for its short enterprise are to be considered seamen only when it is in

actual navigation or transit." *Id.* at 1123. The First Circuit reasoned that an object's physical characteristics of floating or being subject to tidal action were not enough but that one had to be exposed to "a seaman's hazards" in order to recover under the Jones Act.

*DiGiovanni* has quickly become the standard for other courts. In *Kathriner v. UNI-SEA, Inc.,* 975 F.2d 657 (9th Cir.1992), the court held that a floating fish processing plant was not a vessel and therefore the plaintiff was not a seaman. In *Hatch v. Durocher Dock and Dredge,* 820 F.Supp. 314 (E.D.Mich.1993), *aff'd without op.,* 33 F.3d 545 (6th Cir.1994), the court granted Defendant's motion for summary judgment relying on the reasoning in *DiGiovanni.* The court found the barge at issue was "being used merely as a floating platform from which Plaintiff and others were performing their dock construction duties." *Id.* at 316. Thus, the barge's primary purpose was not navigation or commerce and plaintiff could not be characterized as a seaman. In *Taylor v. Cooper River Constructors,* 830 F.Supp. 300 (D.S.C.1993), the court held that the plaintiff was not a seaman because the barge he was on was not a vessel in navigation nor was he "permanently attached" to the barge.

In this district, two judges have relied on *DiGiovanni.*[2] Judge Glasser, in *Buccellato v. New York,* 808 F.Supp. 967 (E.D.N.Y. 1992), allowed the question of whether the plaintiff was a seaman to go to the jury because, under *DiGiovanni,* the barge at issue could be found by a jury to be in navigation. Judge Glasser pointed out that there were serious questions of fact as to the plaintiff's connection to the vessel and that these questions necessitated the issue going to the jury.

In contrast, Judge Seybert granted summary judgment on a Jones Act claim in *Tonnesen v. Yonkers Contracting Co.,* 847 F.Supp. 12 (E.D.N.Y.1994). There, the plaintiff was employed as a dockworker on a crane barge in Jamaica Bay, New York. Relying on *DiGiovanni,* Judge Seybert ruled that the facts supported only one conclusion: that the crane barge was not a vessel in navigation and therefore, the plaintiff was not a seaman under the Jones Act. Judge Seybert first found that the barge's primary purpose was to support the crane, not to transport people or goods. Second, Judge Seybert found that the plaintiff's primary job was construction of a bridge which is non-maritime work. Finally, Judge Seybert found that the barge was not in transit at the time of the accident and that being subject to tidal action was not enough to elevate an essentially non-maritime position to that of seaman. *Id.* at 16.

### B. The case at bar

 It is clear that *DiGiovanni* provides the best guidance to courts seeking to define whether an employee is a seaman under the Jones Act. In the case at bar, we are presented with a similar situation to that in *Tonnesen* and our ruling is the same.

 Here, it is not possible to find that the crane platform or the materials barge were vessels in navigation. Their purpose was not to transport products across water but rather, to act as scaffolding for the workers assigned to repair the dock. Just as scaffolding is erected to hold workers and their materials and equipment when repairing a building on land, the barges here were put into place by tug boats to support the dock workers. The mere fact that the barges floated upon water, rocked with the tidal action, and could be moved 100 feet does not make them vessels in navigation.[3]

---

2. Plaintiff urges us to follow Judge Dearie's denial of summary judgment in *Metro v. Gates Construction Corp.,* No. 89 CV 4036 (March 16, 1992) but we find this decision unpersuasive. The court there did not have to rule on whether the barge was a vessel in navigation as both parties had already stipulated that it was. Thus, this unpublished decision has little precedential value to the case at bar.

3. Plaintiff's own deposition and that of his affiant Ronald Tatarka are the only evidence that might be characterized as creating a "genuine issue of material fact" as to whether the barge had its own propulsion power. Plaintiff's deposition and the evidence provided by Defendant are in accordance as to the barge's characteristics. We have chosen to credit Plaintiff's own words over those of his affiant and will not allow the submission of an affidavit by Plaintiff's own affiant to

Second, Plaintiff's work did not further a navigational purpose. Plaintiff himself stated that he did not participate in the moving of the barge by either anchor line manipulation or tug boat. Plaintiff stated that his duties were exclusively those of a dockbuilder. Although Plaintiff worked as part of a "crew" of dockbuilders, it could not be said that he had any allegiance to either barge except that they enabled him to repair the dock. (Indeed, the Plaintiff stated at his deposition that he could not remember the barge's number because "We don't pay attention to those things." Pl.Dep. at 31.) The mere fact that the construction occurred on a floating platform rather than an affixed jetty or scaffolding is not enough to find that Plaintiff's work there furthered a navigational purpose.

Finally, it is well-established and uncontroverted that the barge was not in transit at the time of the accident. Plaintiff contends that the barges and gangway were subject to tidal action and waves of passing boats, but this argument fails as a matter of law. *See Tonnesen*, 847 F.Supp. at 16; *Kathriner*, 975 F.2d at 661.

Accordingly, under *Wilander* and *DiGiovanni*, neither the crane barge or materials scow were vessels in navigation for Jones Act purposes at the time of Plaintiff's injury. There being no material dispute of fact, the Defendant is entitled to judgment as a matter of law on Plaintiff's claim for damages under the Jones Act.

III. The LHWCA claim

 In *McCarthy v. The Bark Peking*, 716 F.2d 130 (2d Cir.1983), the Second Circuit explicitly adopted the definition of vessel found at 1 U.S.C. § 3 (1976) which defines vessel to include "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." This definition is extremely broad and may well include the crane barge or materials barge at issue here. *See id.* (citing cases finding a floating crane, propellerless boat, uncompleted destroyer, yacht still in construction on dry land, and a shrimp processing plant to be vessels).

create an issue so as to defeat summary judg-

Thus, clearly the barge in this matter could be found by a reasonable jury to be a vessel under Section 905(b) of the LHWCA. Accordingly, summary judgment is denied on this issue.

CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is granted in part and denied in part.

SO ORDERED.